[Sac. No. 691. Department One.—November 29, 1899.]

CHARLES M. WELCH, Administrator, etc., Respondent, v. R. C. SARGENT et al., Appellants. STOCKTON COMBINED HARVESTER AND AGRICULTURAL WORKS et al., Defendants and Respondents. STOCKTON SAVINGS AND LOAN SOCIETY et al., Intervenors and Respondents.

CORPORATIONS—INSOLVENCY—TRANSFER OF STOCK—LIABILITY FOR UNPAID SUBSCRIPTIONS — CREDITORS' BILL.—In general, the law places no restriction upon the right of a stockholder to transfer his stock, so long as the corporation is solvent. But, after the corporation has become insolvent to the knowledge of the stockholder, he cannot, by a transfer of his stock to an irresponsible person, escape liability for an unpaid subscription to stock, as against a creditors' bill to enforce such liability filed by the creditors of the insolvent corporation, who are entitled to have all such transfers canceled, and to have judgment entered against the transferrers.

ID.—FORMER JUDGMENT IN FAVOR OF CORPORATION—DEFENSE ADJUDICATED.—A former judgment rendered in favor of the corporation, enforcing an unpaid installment and adjudging a defense pleaded thereto insufficient, is conclusive against the validity of the same defense when pleaded against the enforcement of other unpaid installments upon a creditor's bill to reach the assets of the insolvent corporation.

ID.—SEVERAL JUDGMENTS IN FAVOR OF CREDITORS.—The creditors appearing in the action, whether as plaintiffs or as intervenors, are entitled to have several judgments against each stockholder made a party to the action, to the extent of his indebtedness to the corporation.

Id.—Issue as to Release by One Creditor—Omissions in Findings Rendered Immaterial.—Where the judgments rendered against a stockholder exceeded the amount due from him to the corporation, he is not prejudiced by an omission to find and to render judgment as to the amount due to another creditor holding collaterals of indeterminate value, or to find upon an issue as to whether such creditor had released such stockholder from further liability.

Id.—Privilege of Stockholder to Pay Debt—Discharge of Liability—Construction of Code—Subscription to Stock not Included.—The privilege given to a stockholder by section 322 of the Civil Code to pay a debt of the corporation in discharge of his liability only applies to his statutory liability to the creditors of the corporation, and does not apply to his liability upon an unpaid subscription to the stock, which is an asset of the corporation, and is payable to the corporation.

Id.—Payment of Subscription.—A stockholder may at any time pay to the corporation the amount of his unpaid subscription to its stock, in discharge of his liability thereupon.

Id.—Voluntary Payment of Debt of Insolvent Corporation—Unauthorized Payment of Subscription.—A stockholder cannot take upon himself the authority of the corporation, and voluntarily pay his subscription to its stock to one creditor of the corporation in preference of other creditors, to their injury. Nor can he, by making such payment, without an agreement with the corporation, acquire a right to have it entered upon the books of the corporation as a payment upon his subscription, or to defend a creditors' bill to enforce the payment of the subscription.

Id.—Preference of Creditor by Corporation—Collaterals Held by Bank—Adjustment upon Creditors' Bill.—A corporation may prefer one of its creditors; and a bank, which has received collateral securities for the debt of the corporation to it, in the due course of business, and in good faith, without taint of fraud, is not bound, upon a creditors' bill to reach assets of the insolvent corporation, to surrender its securities for the benefit of other creditors. The other creditors may compel the bank first to exhaust its securities, and to share ratably with them only for the balance of the debt remaining unpaid thereafter.

Id.—Payments by Indorsers of Corporation Note—Share in Assets.—The indorsers of a note of the corporation, to the extent of any payments made by them, stand in the relation of ordinary creditors of the corporation, and may share ratably in the assets of the corporation.

Id.—Creditors' Bill—Rights of Creditors—Receiver—Ratable Distribution of Fund.—A creditors' bill may be filed against one or any number of the stockholders of an insolvent corporation to compel payment of their unpaid subscriptions to stock. Ordinarily, such a bill is brought for the benefit of all the

creditors who may choose to come in, and the court will, without the formality of a call not made by the corporation, order the payments to be made to a receiver for the benefit of the creditors, and the fund realized therefrom is distributed ratably among the creditors.

ID.—INTERLOCUTORY DECREE—FINDINGS AS TO CORPORATE DEBT—UNASCERTAINED LIABILITY.—Where the decree appealed from is in its nature interlocutory and not final, and is sustained by a proper finding that the debts of the corporation were largely in excess of all the unpaid subscriptions to its stock, the fact that the exact liability upon the balance of an indorsed note held by a bank subject to the application of collateral securities in reduction thereof, upon which note appellants were indorsers, was not and could not be ascertained by the interlocutory decree, is not ground for its reversal.

ID.—SUBSCRIPTION BY DECEASED PERSONS—FORM OF JUDGMENT. Where the claims of creditors of the insolvent corporation were presented against the estate of a deceased subscriber to the stock of the corporation, a judgment under the creditors' bill that the administrator do pay the amount of the subscription in due course of administration to a receiver appointed by the court, to be subject to the further order of the court, is proper in form.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Edward I. Jones, Judge.

The facts are stated in the opinion.

Woods & Levinsky, for R. C. Sargent et al., Appellants.

Nicoll & Orr, for George A. McKenzie et al., Appellants, and for Stockton Combined Harvester and Agricultural Works et al., Respondents.

Ansell Smith, and Gus G. Grant, for Daniel Houser, Appellant.

Minor & Ashley, for Plaintiff Charles M. Welch, Administrator, etc., Respondent.

Budd & Thompson, for Defendants T. B. Baldwin and T. B. Fraser, Respondents.

W. B. Nutter, for Stockton Savings and Loan Society, Intervenor, Respondent.

W. W. Middlecoff, for J. A. Louttit, Executor, etc., Intervenor, Respondent.

CHIPMAN, C.—This is an equitable action brought by a creditor of the Stockton Combined Harvester and Agricultural Works, a corporation, and to obtain a judgment against certain stockholders therein to the extent of the unpaid balance due from them on their subscription to the capital stock of said defendant corporation; to have certain transfers of stock, alleged to have been fraudulently made, declared illegal, the transfers canceled, and that judgment be entered against the transferrers. General relief is also asked. The pleadings are multitudinous and present many phases all grouping around the defendant corporation, while all the pleaders seek some sort of relief from it and from each other.

Plaintiff's intestate, on April 28, 1894, became a judgment creditor of the corporation. Plaintiff alleges that at a time when the corporation was insolvent certain defendants, for the purpose of evading liability, transferred, without consideration, to certain other defendants, alleged to be then and now insolvent, specified shares of its capital stock. Defendant Houser pleads certain facts relating to the way he acquired his stock as exempting him from liability thereon; that he obtained his stock as fully paid up and unassessable, and that he had settled with the intervenor—the Stockton Savings and Loan Society—and had been by it released. Some of the defendants file cross-complaints setting up that they are holden as indorsers on a certain note given by the corporation to the intervenor, the loan society, for $60,000, of which $57,000 remain unpaid. These defendants allege that some of the stockholder defendants still owe twenty-five per cent on their capital stock, and they seek to have the fund arising from such stock applied to said note. Defendant R. C. Sargent files a cross-complaint, much the same as the last above defendants, and in a still further cross-complaint avers that he and certain other defendants on March 17, 1892, executed to defendant J. P. Sargent their promissory note for $50,000, upon which the makers obtained that sum of money and advanced the same to the corporation under an agreement that it would pay the note when due; that it paid all of said note except $16,069.68, for which

unpaid balance the holder of the note has sued the makers; this defendant prays that the assets of the corporation may be applied to its indebtedness generally, including this note. Defendant Baldwin also files a cross-complaint alleging that the corporation owes him and another attorney a fee, of which his share is $500, and prays that its assets may be applied to its debts, including this claim. The loan society, like plaintiff, has a judgment against the corporation, entered December 28, 1893, upon which, by complaint in intervention, it claims an unpaid balance of $153,034.27, and prays payment be made to the loan society, ratably with other indebtedness of the corporation, out of any sum found coming to the corporation from the stockholders. Plaintiff answers this intervention and among other things alleges that the loan society holds securities given it by the corporation sufficient to pay this judgment, and that this intervenor, the loan society, should not share the other assets of the corporation without delivering up its securities to the common creditors' fund. James A. Louttit, as executor, intervenes, setting up that his testatrix, on February 18, 1885, obtained a judgment against the corporation for $13,966.90, no part of which has been paid; he sets up substantially the facts as pleaded by plaintiff, and asks to have the fund derived from the unpaid stock applied ratably on this judgment. Executions on these several judgments were returned *nulla bona.* The foregoing will convey a general idea of the issues.

Certain, but not all, of the defendants appeal from the order denying their several motions for a new trial. There is no appeal from the judgment. The court found, as conclusions of law, that there is due from the corporation to plaintiff, the intervenors, and certain cross-complainants, a sum largely in excess of the unpaid balances due on the capital stock of the corporation. That the court cannot fix the amount now due the loan society until the unpaid subscriptions are paid in and the value of the securities held by the loan society is ascertained and the securities are collected. That cross-complainants R. C. Sargent and Baldwin are entitled to no credits by reason of the matters set forth in their cross-complaints and answers; that as to the equities claimed by certain other defend-

ants and cross-complainants, the court cannot entertain or consider them, but will do so when the amount due on the unpaid stock shall have been paid in, and until such payments said equities cannot be ascertained; that the several transfers of stock in the pleadings and findings mentioned, except as to defendant Fred. M. West, are fraudulent and void, and as to West's transfer it is void as against the creditors of the corporation; that judgment should be entered in favor of certain parties against certain named defendants in amounts named, being the amounts due on the unpaid stock of the corporation; that there being divers persons interested in the fund to arise from said subscriptions to the stock of the corporation, it is necessary that a receiver be appointed to receive all sums paid under the judgments, to be held subject to the order of the court.

It is quite difficult, within any reasonable space, to fairly present the facts and the law upon the various conflicting interests involved. Avoiding unnecessary minutiae we will endeavor to dispose of the salient questions. It sufficiently appears from the evidence that the corporation was insolvent when the transfers of stock complained of were made as found by the court, and has been insolvent ever since, and that the transferrers knew the fact; and the evidence also sustains the finding that the transfers were made out of the ordinary course of business, were voluntary and without valuable consideration, and were made to insolvent or irresponsible transferees, and, except as to defendant F. M. West, with intent on the part of the transferrers to escape liability. This finding relates to the following defendants: R. C. Sargent, William Inglis, L. U. Shippee (defendant Tarbox's intestate), C. Grattan, F. M. West, Otis Perrin (defendant Kate M. Perrin's testate), Kate M. Perrin, W. H. McKee, and Frank Burton. The owners of shares when the action was begun, not embraced in the foregoing category, are: Daniel Houser, W. A. Shippee, B. F. Langford, C. H. Fairchilds, George A. McKenzie, F. T. Baldwin, P. B. Fraser, S. S. Littlehale, and George Inglis. There is no finding as to defendant and stockholder T. H. McCall, who owns eighty shares, for the reason that he has not appeared and is beyond the jurisdiction of the court, being a nonresident. It was found that defendant and stockholder Fairchilds had been

discharged of liability by insolvency proceedings. It was found that there remained unpaid on all the shares of the defendants above named a balance of twenty-five per cent except on the ten shares of Littlehale, which were fully paid up; and that the corporation had neglected and refused to levy any further assessments upon the shares owned by these defendants, or to collect the unpaid subscriptions.

Generally speaking, the law places no restriction upon the right of a stockholder of a corporation to transfer his stock so long as the corporation is solvent. But, as was said by Mr. Justice Temple in *National etc. Co. v. Story etc. Co.*, 111 Cal. 531: "The American doctrine is that after the corporation has become insolvent, and the stockholder knows this, and especially if the corporation has ceased to do business, a shareholder cannot transfer his stock to an insolvent or to an irresponsible person, so as to relieve himself from liability"; and it is added: "I do not find from the cases that it is necessary to find, in addition to the above facts, that there was an actual intent to defraud." (See the authorities cited in the opinion; 3 Thompson on Corporations, sec. 3259.) The questions presented in the present case relate mostly to the application of settled principles to the claims of the various parties. It becomes necessary, therefore, to consider the separate defenses made. The appellants are defendants Houser, R. C. and J. P. Sargent, McKenzie, William Inglis, W. A. Shippee, Grattan, F. M. West, Kate Perrin for herself and as executrix of Otis Perrin, McKee, Tarbox, as administrator of L. U. Shippee's estate, and Langford. Neither the corporation nor the loan society appeals.

As to defendant Houser: When the third and last assessment of twenty-five per cent on the stock of the corporation was levied Houser refused payment, whereupon the corporation brought an action to enforce collection. In his answer he set up, at that time, the facts now pleaded by him in defense to plaintiff's action. It was held here that he was liable on his stock (*Stockton etc. Works v. Houser*, 109 Cal. 1); and so far as the same facts are now pleaded that case is conclusive against his present contention. In his answer to the intervention of the loan society, but not elsewhere in the pleadings, he alleges

a full and complete settlement with the loan society, and a full accord and satisfaction of any and all claims it holds or held against him by reason of his ownership of said shares of the corporation stock. There was evidence that Houser paid $6,000 in compromise of the suit to collect the third assessment, and the witness testified that he understood the settlement to include all claims the loan society had against Houser, and that it included all judgments and all indebtedness. A receipt is in evidence showing what the $6,000 were paid for, and it refers only to the indebtedness, the subject of the then litigation, and nothing in it points to a release from any unpaid balance on the stock which is the subject of the present action. It is very doubtful whether the evidence will justify the inference that the loan society intended to release Houser from its claim to any future liability on his stock as to which twenty-five per cent remained unpaid, and the evidence went in upon the understanding that it did not affect the plaintiff. We may assume, however, that the evidence showed a full release as to the bank of every liability. The court found that there was due from Houser on his four hundred shares the sum of $10,000, and made no finding as to the release pleaded. Houser now claims that it was error not to find upon the issue as to the release, and that he in any event was liable only for his proportion to satisfy the claims of plaintiff and intervenor Louttit; and as the findings show him indebted for the full sum of ten thousand dollars, for which judgment was rendered, this would require him to pay the full amount to the loan society if plaintiff and Louttit were paid by others, or if Houser were released by them or either of them. It is further objected that there was no finding as to the amount due the loan society, and that Houser was injured by failure to find this fact. The court found the amount due plaintiff and intervenor Louttit. The president of the loan society testified: "It is impossible to name the exact amount now due the bank, as it depended upon our ability to collect the securities we hold." The court found that December 28, 1893, the loan society obtained a judgment against the corporation for $262,126.55; that the bank held divers securities therefor; "that said security, assets, and property the

said intervenor now has and holds; that the court does not now undertake to determine what is the value of said security, but finds that the said securities and properties so held by said bank are of great value, but the exact amount whereof is to be hereafter ascertained and determined." There was evidence that some payments had been made which left a balance still due the bank on this judgment of $118,806.93. There was evidence tending to show that the bank held judgments, as security, in favor of the corporation—in what were known as the "insurance cases"—for $90,000, upon which some small payments had been made; also held notes in favor of the corporation of the possible value of $7,000, making somewhat less than $97,000 of collaterals, which if collected would still leave due on its judgment against the corporation about $21,000. As we understand the evidence there is due the bank also the unpaid balance on the $60,000 note.

Plaintiff and intervenor Louttit were entitled to several judgments against each stockholder—the liability being several and not joint (*Baines v. Babcock*, 95 Cal. 590; 29 Am. St. Rep. 158), and their judgments exceed the amount due from Houser. No release from the unpaid balance due the corporation on the Houser stock is pleaded, and the evidence was that it is unpaid, and we have seen that Houser is liable therefor. The issue of a release from the bank is immaterial. Houser cannot be prejudiced at this time by failure to find upon it. If upon the final hearing nothing is found to be due from him to the bank it will receive no part of the $10,000 paid in by him.

As to defendant William Inglis: The court found that there remained unpaid on his one hundred and eighty shares the sum of $4,500. It appears that he transferred to his brother George fifty shares on December 7, 1892, and one hundred and thirty shares on June 8, 1893; William was president of the corporation, which, while he was such president, executed its promissory note to the bank for $60,000, dated January 2, 1891, heretofore referred to. This note was indorsed by William Inglis and other stockholders of the corporation. Action was brought on this note by the bank, and it is now pending, for an alleged balance of $57,036.75 and interest. It appears that Inglis executed a joint and several note with other stockholders

to J. P. Sargent, dated March 17, 1892, for $50,000, to raise money for the corporation, and it was paid to the corporation at the time upon the alleged agreement that it would pay the note. The corporation did pay all but an alleged balance of $16,069.88. Suit was brought by the holder of the note and judgment was entered therein since this action was commenced. There is no evidence of its payment. On September 30, 1893, some months after he transferred his stock to his son George, William Inglis paid to the bank $4,500, to which at that time the corporation was largely indebted much beyond this sum. This payment was the exact amount due as unpaid subscription on his stock. George Inglis, William's transferee, was secretary of the defendant corporation at the time. He testified that the bank notified him of the payment and that it was on account of the corporation indebtedness to the bank, and that he understood from his father that it was intended as the unpaid balance due on his shares. In the handwriting of the bookkeeper of the corporation is the following entry in the journal: "Stockton Savings and Loan Society, to capital stock, $4,500.00, for amount paid by William Inglis as full payment on one hundred and eighty shares of stock in the S. C. H. & A. Works, at $25 per share." The ledger showed the loan society debited and the corporation credited this amount. It was not shown by whose authority these entries were made by the bookkeeper; the bookkeeper was not a witness. There was no corporate action, by resolution or otherwise, authorizing the payment or the entry or subsequently ratifying the payment. There is in evidence a resolution passed by the bank reciting the receipt of this $4,500 payment and that Inglis "has offered to pay to this corporation the sum of $25 per share on such stock so held by him, amounting to the sum of $4,500, and for full payment of his proportion as stockholder of said debt (referring to the liability of the corporation to the bank) other than and exclusive of a certain note (of said corporation) for $60,000 indorsed by said William Inglis and others, providing, in consideration of said payment, he, the said William Inglis, would be relieved from any further personal liability as such stockholder for such debt other than and exclusive of

said note," etc. At this time the corporation was insolvent, which fact was known to Inglis and the bank.

The code provides that "if any stockholder pays his proportion of any debt due from the corporation, incurred while he was such stockholder, he is relieved from any further personal liability for such debt" (Civ. Code, sec. 322); and he may thus discharge his statutory liability as a stockholder without waiting to be sued, and payment, if *bona fide*, would be a bar to an action to collect anything further from the stockholder upon his statutory liability. The liability of the stockholder to the corporation for the unpaid balance of his subscription is a different matter altogether and is an asset of the corporation— is payable to the corporation and no one else. Section 331 of the Civil Code provides: "The directors of any corporation . . . . may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof." Then follow sections directing when assessments may be levied, the manner of levying and collecting the same, etc. It is in evidence that no assessment had been levied by the corporation to enforce payment of the unpaid balance due on its outstanding shares. There was no authority given to Inglis by any corporate act of the corporation to make any payment to the bank in discharge of his liability to the corporation, without which we do not think he could relieve himself from his liability to it. If one stockholder of a corporation could take upon himself such authority all could do so, and the directors would lose control of one of its principal sources of revenue. If the corporation were solvent probably no question would be made by it or by creditors, but where it is insolvent, and a stockholder, knowing the fact, undertakes thus without authority to divert the assets of the corporation, we do not think he should be heard to plead such a payment in discharge of the liability. He could not set off his own debt against the corporation or its creditors on account of unpaid capital stock in an action such as this is (1 Cook on Stock and Stockholders, sec. 193); why should he be permitted to do so indirectly by paying a corporate debt to the bank? We do not think it necessary to decide whether the unpaid balances on the stock constituted a trust fund in the hands

of the directors which could not be disposed of by either a stockholder or by the directors for the benefit of any one creditor, but must be held by them in trust for the benefit of all the creditors—the corporation being insolvent. The trial court so held, and the point is much discussed in the briefs. We decide only that Inglis' voluntary payment to the bank was unauthorized by the corporation and did not discharge him from his liability to the creditors of the corporation in this action.

Where the corporation is insolvent, and the directors neglect or refuse to make a call, courts of equity will disregard the formality of a call and will order the unpaid subscriptions to be paid to a receiver for the benefit of the corporate creditors. (1 Cook on Stock and Stockholders, sec. 108; *Glenn v. Saxton*, 68 Cal. 353.) Stockholders may pay to the corporation the amount of their subscription at any time and thus discharge their liability, but, when the corporation is insolvent, they cannot take upon themselves the authority of the corporation and pay the subscription to one creditor to the injury of the other creditors.

Otis Perrin made a payment to the bank at the same time and under similar circumstances and for the same purpose as Inglis made his payment. What has been said as to Inglis applies to Perrin.

Certain stockholders defendants set up by cross-complaint, as we have heretofore stated, that they are indorsers of the corporation note for $60,000, and that judgment has been rendered against them for an unpaid balance. Defendant R. C. Sargent set up that he and other stockholders are defendants in an action to enforce payment of a note made by them for the benefit of the corporation. Defendant Baldwin pleaded against his liability a claim due him from the corporation. These defendants ask that the unpaid balance due on stock subscriptions be applied ratably in payment of the debts for which they are liable. Intervenor, the loan society, made a similar claim to share ratably with other creditors.

As to intervenor the loan society: The court held that its claim for the balance still due, after its securities are realized upon, ranks with plaintiff's and Louttit's claims and must share ratably with them and other creditors. It was also held that

the bank is not obliged to surrender its securities for the common benefit of all creditors. We see no error in thus holding. The securities came into the hands of the bank in due course of business untainted by fraud, and no lack of good faith is alleged or proved. The corporation had a right to prefer the bank (Civ. Code, sec. 3432); and, under section 3433 of the Civil Code, the creditors, other than the bank, can compel the bank to first exhaust its securities before it can share the other assets of the corporation.

The court, we think, properly held that indorsers of the corporation note for $60,000 stand in the relation of ordinary creditors of the corporation to the extent of any payment made by them and may share ratably the assets of the corporation. So also Baldwin, on making proof of his claim against the corporation. So also Inglis and Perrin, who paid some portion of the ordinary debt of the corporation; and, besides, they have some equities arising out of the agreement under which they paid this portion of the corporation debt to be adjusted between them and the bank, as also has Houser.

The finding as to the Sargent note is not questioned in the briefs, and we pass it without comment.

Ordinarily, the bill is brought for the benefit of all the creditors who choose to come in, but the action may be against a single stockholder or any number of them (1 Cook on Stock and Stockholders, secs. 205, 206); and the fund realized from the suit in equity is distributed ratably among all the creditors. (*Mathis v. Pridham*, 1 Tex. Civ. App. 58; 1 Cook on Stock and Stockholders, sec. 193. See, also, *Harmon v. Page*, 62 Cal. 448; *Lamar Ins. Co. v. Gulick*, 102 Ill. 41; *Hatch v. Dana*, 101 U. S. 205; *Baines v. Babcock, supra; Potter v. Dear*, 95 Cal. 578.)

Appellants complain that the court failed to find upon the issue presented as to the $60,000 note of the corporation of which they were indorsers; that the court should have found the amount due intervenor, the loan society; and that there is no finding of a definite amount due from the defendant corporation greater than the sums due plaintiff and intervenor Louttit—in all $17,542.15—while the aggregate judgment against all the defendant stockholders is $51,200. It is claimed that the judgments against the appealing defendants—in all

$20,575—are $3,035 in excess of all the debts found by the court to exist against the corporation. It may be that a court of equity would not order full payment by all stockholders of unpaid subscriptions, where it was clearly unnecessary to do so to meet the claims proved. However this may be, it appears from the evidence that the corporate debt is largely in excess of the upaid subscriptions, and the court so found. We think this was a sufficient finding of the material ultimate fact upon the issues presented by plaintiff and intervenors Louttit and the loan society, and was not inconsistent with the fact found that the court could not definitely determine the exact amount due the bank until the securities held by it were realized upon. There was some evidence of the tentative value of these securities, but not of their actual cash value. By far the largest security was an unpaid judgment against certain insurance companies; the remaining securities were promissory notes and book accounts of uncertain value. We think the court would not have been warranted by the evidence in determining the exact sum due the bank after deducting its securities; but there was sufficient evidence to justify it in finding that the debts of the corporation were largely in excess of the unpaid subscriptions. For the purposes of the decree, which was in effect only interlocutory, the findings are sufficiently responsive to the issues.

It is urged that a judgment was erroneously entered against the estate of Otis Perrin, deceased. The judgment was that the administrator pay in due course of administration, and payments were ordered to be made to a receiver and to be subject to the further order of the court. The claims of plaintiff and intervenor Louttit were duly presented to the representative of the estate. Whether the judgment is sustained by the findings cannot be questioned on an appeal from an order denying new trial (*Brison v. Brison,* 90 Cal. 323); and the findings we think are supported by the evidence. Besides, we think the judgment as entered was proper.

It is advised that the judgment and order be affirmed.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

                    Van Dyke, J., Harrison, J., Garoutte, J.