*352
 
 Marshall, C. J.
 

 This suit is on behalf of creditors against the stockholders of an insolvent corporation “authorized to receive money on deposit.” This liability exists by virtue of provisions found in Section 3, Article XIII, of the Ohio Constitution:
 

 “Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.”
 

 In
 
 Lang
 
 v.
 
 Osborn Bank,
 
 100 Ohio St., 51, 125 N. E., 105, this provision was held to be complete and self-executing and to require no aid from legislative enactment. The General Assembly has, however, framed a statute containing practically the same language, Section 710-75, General Code, which section contains the further administrative provision: “At any time after taking possession of a bank for the purpose of liquidation when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders.” At the same time, and as a part of the same act, the General Assembly enacted Section 710-30, General Code, which relates to a bank the capital stock of which is impaired by losses or depreciation, but which is still a going concern. The
 
 *353
 
 two sections, as parts of the Banking Code, are significant, and each is an aid to the interpretation of the other. They! indicate distinctly1 that to (restore impaired capital aa an alternative to enforced liquidation is one thing, and that taking possession by the superintendent of banks for the purpose of liquidation and enforcement of double liability is quite another. By the provisions of Section 710-30, the superintendent of banks was given no power to enforce restoration of capital of the going concern. Manifestly there is no constitutional warrant for the Legislature attempting to confer such power. The superintendent’s authority is to give the notice, and, if the deficiency is not made good, to take possession of the bank and its assets and proceed to liquidate. However imperative the notice, however drastic the alternative may seem, any payment by a stockholder toward restoration is voluntary. The double liability by the provisions of Section 710-75, as well as by any common sense interpretation of Section 3 of Article XIII of the Constitution, is enforceable by legal proceedings at the suit of the superintendent of banks, but only after liquidation has been determined upon, and only for the benefit of the creditors. The payments for restoration, while making creditors more secure, may never reach thenq because the money is paid to a going concern to restore past losses and depreciation, and may in turn be dissipated before liquidation is ordered. It is the theory of restoration of capital that an insolvent concern has become insolvent and restoration of capital is therefore a necessary condition precedent to further conduct of business, and, if it has no further losses, there will never be occasion to enforce the double
 
 *354
 
 liability. Tbe payments cannot be said to have been made under duress, because the stockholder had the alternative to refuse the payment and permit immediate liquidation. It cannot be said that he has been defrauded, because actual knowledge of the facts was brought to him as the basis of the suggestion of restoration of capital. As a stockholder, he had full opportunity and means of knowledge, and by the exercise of common diligence could have become fully acquainted with the facts. The payment made by him, in conjunction with other stockholders, was upon the distinct consideration that the bank in which he was interested might be enabled to undertake anew its regular and active business. It was made for the purpose of restoring what had been lost, and the payment by the stockholders and acceptance by the superintendent of banks were the exercise of corporate powers which Section 710-30 expressly authorizes. That the attempt to revive the business of the bank by this additional contribution proved unsuccessful does not in the least detract from the validity of the transaction. If the stockholders were mistaken about either facts or law, the mistake cannot be charged to the creditors. The character of the 80 per cent, payment, and the intent and expectation of Mr. Andrews, are shown by his own testimony: “I asked him what about the money we paid in, if we made up this deficiency what about this money, where did it go? He said: ‘You will get that back some time if you maintain the bank and if not it will go on your double liability.’ ” This shows conclusively that the money was paid in, not for immediate distribution to creditors, but to pre
 
 *355
 
 serve the bank as a going concern and to protect Mr. Andrews upon his own investment. The fact that the money was paid August 5, 1926, and the bank continued business until January 10, 1927, establishes the transaction as a capital restoration and not a double liability assessment. The inducement held out by the banking department, if it was an inducement, or the agreement, if it amounted to an agreement, was, in either event, most unfortunate, but in neither event could validity be given to the payment as an application upon double liability. If this transaction be measured by statutory procedure strictly interpreted, it creates no legal obligation on the part of the superintendent of banks to credit Mr. Andrews for the $800 paid on August 5, 1926.
 

 It is urged, however, that Andrews is entitled to have his rights measured by rules of equity. It is argued, first, that it having been agreed that the money would be applied upon the double liability, it becomes charged with a trust to be used for creditors exclusively, and, second, that it becomes an equitable set-off against that liability when later asserted. Equity has no such efficacy. Equity is only open to those who have just rights to enforce where the law is inadequate. Equity will not give validity to a transaction which is void at law. Equity will not disregard constitutional statutory provisions. Applying these principles to the case at bar, equity will not disregard the rights of creditors in order to compel the superintendent of banks to observe an agreement hb had-no right to make. Those principles are so well settled as to be axiomatic. Among the numerous cases which might be cited, three leading authorities are
 
 Hedges
 
 v.
 
 Dixon
 
 
 *356
 

 County,
 
 150 U. S., 182, 14 S. Ct., 71, 37 L. Ed., 1044;
 
 Rambo et al., Partners,
 
 v.
 
 First State Bank of Argentine,
 
 88 Kan., 257, 128 P., 182;
 
 Colonial Trust Co.
 
 v.
 
 Central Trust Co.,
 
 243 Pa., 268, 276, 90 A., 189.
 

 In the instant ease, the money paid in by the stockholders on August 5th was not kept separate from other funds of the bank. Its identity was immediately lost by becoming mingled with the general funds of the bank. This fact alone would preclude the application of the principle of a trust fund.
 

 The distinction between restoration of capital of a going concern, and responding to the double liability after dissolution has been ordered, has never been declared in any previous case decided by this court, but has been recognized by a large number of cases in other jurisdictions.
 
 Delano
 
 v.
 
 Butler,
 
 118 U. S., 634, 7 S. Ct., 39, 30 L. Ed., 260;
 
 Duke, Supervisor of Banking,
 
 v.
 
 Force,
 
 120 Wash., 599, 208 P., 67, 23 A. L. R., 1354;
 
 Citizens Bank of Lane
 
 v.
 
 Needham,
 
 120 Kan., 523, 244 P., 7, 45 A. L. R., 1202;
 
 Markus
 
 v.
 
 Austin, Commr. of Banking,
 
 (Tex. Civ. App.), 284 S. W., 326;
 
 Smith, Supt. of Banks,
 
 v.
 
 Goldsmith,
 
 50 S. D., 1, 207 N. W., 977; and
 
 Andrew, Supt. of Banking,
 
 v.
 
 Farmers Trust & Sav. Bank of Charles City,
 
 204 Iowa, 243, 213 N. W., 925, 56 A. L. R., 521. Numerous cases have been cited by plaintiff in error on the subject of equitable set-off, but they will not be reviewed further than to state that they are cases in which stockholder’s liability was not an element.
 

 In addition to all the foregoing considerations, the plaintiff in error must fail for the additional reason that the fund collected from stockholders upon their double liability would constitute a trust fund ap
 
 *357
 
 plieable solely to the claims of creditors of the bank. The trust fund theory will be discussed on the second branch of this error proceeding, viz., whether Andrews is entitled to offset his deposit in the bank against his double liability as a stockholder. On this point it must be admitted that the authorities are in sharp conflict. The case of
 
 King
 
 v.
 
 Armstrong, Recr.,
 
 50 Ohio St., 222, 34 N. E., 163, while not exactly parallel in its facts, declares a principle which, if applied to the present controversy, is decisive of it. It is declared in the syllabus of that case:
 

 “The indebtedness of the stockholders on their individual liability, together with the other assets of the insolvent bank, constitute a trust fund for the benefit of its creditors; and in equity, such indebtedness of a stockholder who is insolvent, may be set off against a dividend, payable out of the trust fund, on a balance due him on his deposit account with the bank at the time of its failure.”
 

 It will be observed that the court declared that it was only the dividend which could be offset, and not the claim itself. In that case the stockholder assigned his claim to the deposit to a third party in payment of a pre-existing debt. The court, however, refused to recognize the claim of the assignee of the debt, the stockholder being at the time insolvent, and held the dividend as a credit upon the judgment against the stockholder. The principle declared in that case is in line with the prevailing weight of authority on that subject. It is in harmony with
 
 Sawyer
 
 v.
 
 Hoag, Assignee,
 
 84 U. S. (17 Wall.), 610, 21 L. Ed., 731;
 
 Welch, Admr.,
 
 v.
 
 Sargent,
 
 127 Cal., 72, 59 P., 319;
 
 U. S. Trust Co. of N. Y., Recr.,
 
 v.
 
 *358
 

 U. S. State Fire Ins. Co.,
 
 18 N. Y., 199;
 
 Parker
 
 v.
 
 Carolina Sav. Bank,
 
 53 S. C., 583, 31 S. E., 673, 69 Am. St. Rep., 888;
 
 Richardson
 
 v.
 
 Merritt,
 
 74 Minn., 354, 77 N. W., 234, 407, 968;
 
 Efird
 
 v.
 
 Piedmont Land Improvement & Investment Co.,
 
 55 S. C., 78, 32 S. E., 758, 897;
 
 Wilkinson v. Bertock & Co.,
 
 111 Ga., 187, 36 S. E., 623;
 
 Shickle v. Watts,
 
 94 Mo., 410, 7 S. W., 274;
 
 Ball Electric Light Co.
 
 v.
 
 Child,
 
 68 Conn., 522, 37 A., 391;
 
 Buchanan
 
 v.
 
 Meisser,
 
 105 Ill., 638.
 

 It is believed that all of the text-books on banking declare the trust fund theory as prevailing, both upon reason and authority. The' authorities on this subject are reviewed pro and con in the report of the case of
 
 Reimers
 
 v.
 
 Larson,
 
 in 40 A. L. R., in an editor’s note at page 1183. It is believed that the law on this subject was regarded as definitely settled in favor of the trust fund theory, and a denial of the right of set-off, both upon the liability of stockholders for unpaid balance of stock and upon the double liability of stock for the benefit of creditors of insolvent corporations in process of liquidation, until the decision of
 
 Niles, Assignee,
 
 v.
 
 Olszak,
 
 87 Ohio St., 229, 100 N. E., 820, L. R. A., 1918E, 238, Ann. Cas., 1913E, 1020. That case allowed the right of set-off as against the unpaid portions of stock subscriptions, but that decision was grounded upon the peculiar equities of that case. The facts of that case related solely to the unpaid part of a stock subscription, and the syllabus is likewise confined to the right of set-off against a stock subscription. The opinion, however, goes far beyond the syllabus, and far beyond the range of the controversy itself, and reviews the authorities upon the subject of double liability under the statute and
 
 *359
 
 Constitution. There is of course more reason for permitting a set-off against an unpaid stock subscription than where the liability is imposed by statute for the benefit of creditors. The declarations of an opinion do not constitute the law, even when they aré pertinent to the facts of the controversy. They are of course much less authoritative when, as in the case of
 
 Niles
 
 v.
 
 Olszak,
 
 they are clearly
 
 obiter.
 
 Much of the force of
 
 Niles
 
 v.
 
 Olszak
 
 has been taken away by the more recent decision of
 
 Crawford
 
 v.
 
 McDowell, Recr., ante,
 
 112, 177 N. E., 27. In that case it was held:
 

 “In an action by a receiver of an insolvent private corporation against a stockholder on unpaid stock subscription, the stockholder is not entitled to set off amounts due to him from the corporation under a contract for commissions for the sale of stock, nor for payments made by him on behalf of the corporation.
 
 (Niles, Assignee,
 
 v.
 
 Olszak,
 
 87 Ohio St., 229, [100 N. E., 820, L. R. A., 1918E, 238, Ann. Cas., 1913E, 1020] distinguished.)”
 

 It would now seem, in view of the present controversy and the confusion caused by the
 
 Olssak case,
 
 that it would have been better to have declared that that case was
 
 pro tanto
 
 overruled.
 

 We are of the opinion that
 
 Crawford
 
 v.
 
 McDowell
 
 states the better doctrine, and that the opinion in
 
 Niles, Assignee,
 
 v.
 
 Olszak,
 
 in so far as it discusses double liability of stockholders, is contrary to the weight of authority.
 

 We have reached the conclusion that the double liability of stockholders to the creditors of an insolvent bank in process of liquidation is not subject
 
 *360
 
 to set-off by deposits of the stockholder, except so far as dividends may be paid thereon.
 

 It results that upon the petition in error of the plaintiff in error the judgment of the Court of Appeals must be affirmed, and that upon the cross-petition in error, relating to the set-off of the deposit, the judgment of the Court of Appeals must be reversed.
 

 Judgment affirmed in part and reversed in part,
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.