**MANCHESTER PREMIUM BUDGET CORPORATION, Appellant,**

v.

**MANCHESTER INSURANCE & INDEMNITY COMPANY, Appellee.**

**No. 79–1314.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1979.

Decided Jan. 10, 1980.

Gerald A. Rimmel, Susman, Schermer, Willer & Rimmel, St. Louis, Mo., for appellant; Barry S. Schermer, St. Louis, Mo., on brief.

William G. Ohlhausen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellee; Richard A. Ahrens, St. Louis, Mo., on brief.

Before GIBSON, Chief Judge, and STEPHENSON and HENLEY, Circuit Judges.

FLOYD R. GIBSON, Chief Judge.

The appellant, Manchester Premium Budget Corporation (Premium), seeks a set-off on an admitted debt owing to a sister corporation. The United States District Court for the Eastern District of Missouri [1] denied Premium any set-off in this diversity suit brought by Harry Jump, conservator of Manchester Insurance and Indemnity Company, to recover monies owed on a promissory note. We affirm.

Manchester Insurance and Indemnity Company (Manchester) is an Ohio-chartered corporation whose principal place of business is located in St. Louis, Missouri. Prior to September 23, 1975, Manchester engaged in issuing general liability and auto insurance policies through its agents in Alabama, Illinois, Kentucky, Louisiana, Mississippi, Missouri, North Dakota, and Ohio. On the latter date, Harry Jump, a citizen of Ohio and Superintendent of Insurance for the State of Ohio, was appointed conservator of Manchester under Ohio Rev.Code Ann. §§ 3903 et seq. (Page 1971) [2] for the purpose of rehabilitating or liquidating the financially troubled insurance company. The officers, agents and employees of Manchester were also enjoined from carrying on any further business.

On January 7, 1977, Manchester, through Jump and the Ohio Department of Insurance, demanded payment from Manchester Premium Budget Corporation of a subordinated promissory note executed by Premium on December 31, 1974, in the principal amount of $700,000, payable to Manchester on December 31, 1976. Premium, after making two interest payments, refused any further payment on the note obligation.

Premium is a Missouri corporation whose principal place of business is located in St. Louis, Missouri, and is a sister corporation of Manchester. [3] Premium was primarily engaged in the business of financing insurance premiums on policies written by Manchester. Premium had borrowed the money from Manchester in order to obtain funds to continue financing Manchester's policies. This type of transaction between Manchester and Premium had been utilized previously in order to fund Premium's financing operations.

On January 12, 1977, Manchester, through the conservator, Jump, filed suit in the District Court against Premium for nonpayment on the note obligation. Diversity jurisdiction was established. [4] Premium answered Manchester's complaint and asserted a set-off on the note obligation, claiming a lien upon any and all unearned premiums under policies financed by Premium that Manchester had cancelled as a re-

---

1. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

2. By virtue of section 3903.07, Jump succeeded to the title to all the property and assets of Manchester. Section 3903.07 provides:

 The superintendent of insurance shall be vested by operation of law with the title to all property, contracts, and rights of action of the company as of the date of the court order directing rehabilitation or liquidation. The filing or recording of such order in any record office of the state imparts the same notice that a deed, bill of sale, or other evidence of title filed or recorded by such company would have imparted. He may deal with the property and business of the company in his name as superintendent or, if the court so orders, in the name of the company.

 The superintendent may, subject to the approval of the court, sell or otherwise dispose of the real and personal property of the company, or any part thereof, and sell or compromise all doubtful or uncollectible debts or

claims owing to the company, including claims based upon an assessment levied against a member or subscriber of any company issuing assessable policies.

3. Manchester and Premium share common offices and officers. They are sister corporations, both being wholly owned subsidiaries of Manchester Life and Casualty Management Corporation.

4. Jurisdiction is proper under 28 U.S.C. § 1332 (1976) since Jump, a citizen of Ohio, is the real party in interest under Fed.R.Civ.P. 17(a), as he is "authorized by statute [Ohio Rev.Code Ann. § 3903.07 (Page 1971)]" to "sue in his own name without joining" Manchester Insurance and Indemnity Company. See Relfe v. Rundle, 103 U.S. 222, 225–26, 26 L.Ed. 337 (1880); Robertson v. Malone, 190 F.2d 756, 759–60 (5th Cir. 1951); 3A Moore's Federal Practice ¶ 17.14, at 17,168 (2d ed. 1979).

sult of the conservatorship.[5] From September 23, 1975, to March 14, 1976, Manchester cancelled numerous policies. On March 14, 1976, by order of the Court of Common Pleas of Franklin County, Ohio, the remaining policies were cancelled.

The case was tried before the District Court without a jury. On March 12, 1979, the court entered a memorandum decision denying Premium any right of set-off and entering judgment in favor of Manchester for the full amount then due on the note, $889,000.[6] Premium filed a timely notice of appeal.

The District Court held that the law of the State of Ohio applied and concluded that regardless of which state law is applied, the result would be the same. The court went on to find that under Ohio law set-offs of mutual debts and mutual credits were permissible but that the debts and credits involved herein were not mutual because they were not in the same right and between the same parties standing in the same capacity. The court further noted that debts or credits that are "acquired collaterally as by purchase or assignment" do not fulfill the requirement of mutuality, citing *United States ex rel. Kirby v. John A. Johnson & Sons, Inc.*, 111 F.Supp. 785, 787 (E.D.Tenn.1953), and also noted that

the determination of the propriety of a set-off must be based on the right of the parties at the time of insolvency. *Dakin v. Bayly*, 290 U.S. 143, 148, 54 S.Ct. 113, 78 L.Ed. 229 (1933). Although the District Court pointed out that there was some question about the validity of the assignments of the rights under the insurance policies issued in this case to Premium,[7] it did not base its decision on that apparent defect, but rather predicated its decision on the lack of mutuality of the debts and credits herein involved.

At the outset it should be noted that all of the policyholders whose policies were cancelled would be entitled to a return of the unearned premium paid to the insurer Manchester, which would also include any policies properly assigned to Premium. However, to permit Premium to receive one hundred percent credit on its cancelled policy premiums would operate as a clear and distinct preference to it over the other policyholders who did not finance their insurance premiums through Premium. Thus the inequity of allowing a set-off in this situation was very persuasive to the District Court and is one which we also feel is entitled to grave consideration.

We apply Ohio law to the resolution of the set-off issue.[8] Under Ohio law, a

5. An unearned premium represents that portion of an insurance premium paid for by the insured for the period of time the insurance company is unable to fulfill its contractual obligation to provide insurance due to cancellation of the policy.

6. According to plaintiff's calculations, the unearned premiums resulting from the cancellation of all policies after September 23, 1975, was $510,665.80; defendant's computation was $585,511.65. The discrepancy is not explained but is immaterial to the issues determined in this appeal.

7. The record reveals that Premium had a total of 1,703 promissory note and assignment forms issued in connection with the financing of premiums. Of those forms, only 69 are signed by the insured, 1,499 are signed by someone other than the insured, and 135 are not signed by anyone.

8. Since jurisdiction is based upon diversity of citizenship, Missouri conflict of law principles dictate which substantive law should apply.

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The District Court determined that Missouri has adopted the conflict of laws position set forth in the Restatement (Second) on Conflict of Laws in regard to tort suits. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969). The District Court then concluded that the Restatement (Second) on Conflict of Laws § 302 (1971) could be applied by the Missouri courts. Section 302 provides:
　(1) Issues involving the rights and liabilities of a corporation * * * are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties * * *.
　(2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case * * *.
The District Court then determined that in consideration of the factors involved in the case, the law of Ohio should control.
　We note that in *McDonald v. Pacific States Life Insurance Co.*, 344 Mo. 1, 10, 124 S.W.2d

set-off is allowed in insurance liquidation procedures only in "cases of mutual debts or credits between the company and another person, such credits and debts shall be set off and the balance only shall be allowed or paid, * * * ." Ohio Rev.Code Ann. § 3903.19 (Page 1971). Ohio law clearly requires mutuality in order for a set-off to be allowed. The District Court found the required mutuality to be lacking. We agree.

 Under Ohio case law, "a set-off, whether legal or equitable, must relate to cross-demands in the same right, and when there is mutuality of obligation." *Witham v. South Side Building & Loan Association of Lima, Ohio,* 133 Ohio St. 560, 562, 15 N.E.2d 149, 150 (1938); *Andrews v. State ex rel. Blair,* 124 Ohio St. 348, 178 N.E. 581, 582 (1931). The Supreme Court of Ohio has defined mutuality of parties to be "an essential condition of a valid set-off or counterclaim. That is, the debts must be to and from the same persons and in the same capacity." *Nichols v. Metropolitan Life Insurance Co.,* 137 Ohio St. 542, 545, 31 N.E.2d 224, 225 (1941). *Accord, United States v. Greenwich Mill & Elevator Co.,* 291 F.Supp. 609, 614 (N.D.Ohio 1968). No mutuality exists between the assigned unearned premiums held by Premium and the note owing to Manchester. The assignment or tendering of an interest to one who had a liability on a promissory note does not fulfill the mutuality requirement under Ohio law. *See Witham, supra,* 133 Ohio St. 560, 561, 15 N.E.2d 149, 150 (1938). A set-off cannot be allowed under these circumstances, as Premium, at best, stands in the shoes of the policyholders it financed. Premium is thus placed on the same plane and in the same category as the other policyholders whose policies were cancelled. Any other result would be inequitable to the other creditors of the insolvent insurer and to the other cancelled policyholders.

Affirmed.

1157, 1162 (1939), the Supreme Court of Missouri found that the conflict of laws issue should be resolved by applying the law of the state where the insurance company was domiciled. In 1976, Missouri adopted the Uniform

Insurer's Liquidation Act, Mo.Ann.Stat. §§ 375.950–.990 (Vernon Supp.1979). Section 375.950(3) defines "domiciliary state" to mean "the state in which an insurer is incorporated or organized, * * * ."