Harry V. JUMP, etc. et al., Appellees,

v.

Samuel GOLDENHERSH et al., Appellants.

No. 79–1734.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1980.

Decided April 16, 1980.

Frank Susman of Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for appellants; Gerald A. Rimmel and Barry S. Schermer, St. Louis, Mo., on brief.

Alan F. Berliner of Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for appellees; Denis J. Murphy, Columbus, Ohio, and William G. Ohlhausen of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., on brief.

Before BRIGHT, ROSS and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Harry V. Jump, Superintendent of Insurance for the State of Ohio and Conservator of Manchester Insurance and Indemnity Company (MI&I), filed this diversity action in the United States District Court for the Eastern District of Missouri * against Samuel J. Goldenhersh, Leo Newman, the law firm of Goldenhersh and Newman, and James B. Hutchings.[1] The suit sought the recovery of $114,308.83 in legal fees paid to Goldenhersh and Newman by MI&I in violation of the Ohio preferential payment statute, Ohio Rev.Code Ann. § 3903.17 (Page). After trial, the Court, applying Ohio substantive law, entered judgment for the appellee in the full amount claimed. *Jump v. Goldenhersh*, 474 F.Supp. 1306 (E.D.Mo.1979). We affirm.

This case arose out of the rapid financial decline and ultimate insolvency of Manchester Insurance and Indemnity Company. MI&I was an Ohio corporation which was engaged in the business of issuing general liability and auto insurance policies through its agents in several states. Samuel J. Goldenhersh was vice president and general counsel, and Leo M. Newman was secretary-treasurer and assistant general counsel. Both were directors and members of the executive committee of MI&I. The law firm of Goldenhersh and Newman represented MI&I in eastern Missouri.

In late 1974 and early 1975, MI&I suffered heavy losses in its casualty business. The Ohio Department of Insurance became aware of the company's financial troubles in the spring of 1975 when it began a routine triennial examination. In June, 1975, officials of the department began a series of meetings with Goldenhersh and other officers of MI&I to discuss what to do about the company's financial plight. It was agreed that the company should stop writing new casualty business and renewals, and on July 18, 1975, the department instructed the company to carry out this decision. On August 4, the company advised the department that it was cancelling all contracts, closing several offices, and getting out of Florida and the casualty business completely. Meanwhile, Goldenhersh was in Florida investigating the state of pending claims and visiting with adjusters and lawyers representing the company in an effort to get a more accurate picture of the company's financial condition. The department was continuing its investigation, and on August 5 another meeting was held among department and company officials, including Goldenhersh, in which department officials stated they believed the company to be under-reserved by more than four million dollars. The department made several suggestions, including that the company refrain from transferring any assets without the approval of the department. By mid-August, company officials, including Newman and Goldenhersh, knew that regulatory action by the department was a possibility, depending upon the results of the triennial examination. The company continued the process of claims evaluation, in which Goldenhersh was heavily involved, and closed its offices in several states.

The company's financial condition continued to worsen. In the midst of this financial crisis, at a time when conservatorship

---

* The Hon. Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri.

1. Before trial the parties stipulated to the dismissal of Hutchings as a party defendant.

was looming, the preferential payments to Goldenhersh and Newman were made. From September 5 to September 23, 1975, MI&I paid $114,308.83 to the law firm in legal fees, which was one hundred per cent of what the company owed it. Other creditors of the company, including most other lawyers, received nothing, or less than what they were owed.[2] The payments were also unusual in other respects. They were interim billings, although the law firm's policy had been to bill as each case closed. They were not itemized, were not forwarded to the company with a cover letter as had been past practice, and many were handwritten. The firm received significantly more in September than it had been paid in previous months. The monthly payments had been about $15,000 until August, 1975, when the payment was $40,000; the September payments were a dramatic increase. Most other lawyers who had performed legal services for the company were not paid in this manner.

On September 22, 1975, the company consented to a conservatorship. On September 23, appellee Jump filed suit in the Court of Common Pleas of Franklin County, Ohio, and that court issued an order pursuant to Ohio Rev.Code Ann. §§ 3903.03 and 3903.06 (Page) appointing him conservator and directing him to take charge of the property and affairs of MI&I for purposes of rehabilitation or liquidation. That same day the company paid Goldenhersh and Newman $2,150. On February 13, 1976, the court adjudged the company to be insolvent and directed the liquidation of its property and affairs, and on March 29, 1977, the court ordered the appellee to collect any preferential payments made within the four-month period which preceded his appointment as conservator.

Pursuant to that order, the appellee filed this suit. Jurisdiction was based upon diversity of citizenship.[3] After a non-jury trial, the District Court, applying Missouri conflicts rules and the substantive law of Ohio, entered judgment for the appellee in the full amount claimed. In a thorough opinion, the Court found that the appellants accepted the legal fees in question "having reasonable cause to believe" that they were made in preference to other creditors and were therefore voidable under Ohio Rev. Code Ann. § 3903.17 (Page). This key finding is not contested in this Court.

The conflict-of-laws rules of the forum state control which substantive law should apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Manchester Premium Budget Corp. v. Manchester Insurance & Indemnity Co.*, 612 F.2d 389, 391 n.8 (8th Cir. 1980). The parties disagree about whether the Missouri Supreme Court would apply Ohio or Missouri substantive law. The appellants argue that this case is one arising out of a contract for the performance of legal services, and that the Supreme Court of Missouri would in such a case apply section 196 of the Restatement (Second) Conflict of Laws, which would in turn compel the application of Missouri substantive law. We disagree.

This is not a suit for breach of contract, but is instead a suit by a conservator to recover monies wrongfully paid to some creditors in preference to others. The choice-of-law doctrine which Missouri would apply in a contract case is not controlling. The choice-of-law question in an insurance

---

**2.** Other law firms which represented the company filed proofs of claim in rather sizeable amounts. For example, Max Foust filed a proof of claim for $150,000 for services performed before September 23, 1975. Goldenhersh and Newman is not the only law firm alleged to have received a preference, however. In the District Court, the appellee alleged that another $140,000 in preferential payments were made to the East St. Louis law firm of Goldenhersh and Goldenhersh, to the Florida firm of Vernus & Bowling, and to James Meyer of Marian, Illinois, all of which appellee is attempting to collect in other lawsuits.

**3.** Goldenhersh, Newman, and Goldenhersh and Newman are citizens of Missouri for diversity purposes. Jump is a citizen of Ohio and is authorized by Ohio law to sue in his own name without joining MI&I. Ohio Rev.Code Ann. § 3903.07 (Page). Consequently, he is the real party in interest under Fed.R.Civ.P. 17(a), and complete diversity exists.

company liquidation case such as this was resolved by the Missouri Supreme Court in *McDonald v. Pacific States Life Ins. Co.*, 344 Mo. 1, 124 S.W.2d 1157 (1939). There, a Missouri creditor obtained a judgment against a Colorado chartered insurance company before a liquidator was appointed, but sought to levy on the corporation's property after the liquidator had obtained a court order in Colorado which enjoined all persons from enforcing any judgments against the insolvent company. In enforcing the Colorado court order, the Missouri Supreme Court reasoned:

> [T]he * * * liquidator in this case is more than a mere chancery receiver. He derives his power, not from the court's decree, but from the statute under which the decree was rendered. That statute is a part of the charter of the corporation, carried with it into every state in which it owns property or does business. * * * "Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs both in life and after dissolution." (quoting *Relfe v. Rundle*, 103 U.S. 222, 226, 26 L.Ed. 337 (1880).)
>
> We believe that the weight of authority is that the assets of insolvent insurance companies should be treated as a unit, and disposed of for the benefit of all creditors ratably without regard to the location of the assets or the residence of creditors. * * * To permit the property of insolvent insurance companies to

be subjected to the claims of the most diligent creditors in each of the states where such assets may be located, would result in the dissipation of such assets and the subjection of the same to the claims of the most diligent creditors in preference not only to the creditors of other states, but in preference to the claims of other creditors in the same state.

344 Mo. at 7, 8, 12, 124 S.W.2d at 1159, 1160, 1162–63.

▪ MI&I was an Ohio corporation, and we believe that the Missouri Supreme Court would apply Ohio substantive law to the facts at bar. Since the Ohio preference statute is a part of the statutory scheme under which MI&I was being liquidated, it makes sense that the statute should apply to determine which payments to creditors are voidable. As further support for the application of Ohio law, we note that Missouri has adopted the choice-of-law provisions of the Restatement (Second) of Conflict of Laws (1971) in tort suits, *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo.1969), and could choose to apply to these facts the applicable Restatement position with respect to the powers and liabilities of corporations. Restatement (Second) of Conflict of Laws § 302 (1971) provides that the rights and liabilities of a corporation should be determined by the law of the state which, with respect to the issue in question, has the most significant relationship to the occurrence and the parties; "the local law of the state of incorporation will be applied to determine such issues, except in the unusual case. . . ." Thus, the result would be the same under both *McDonald* and the Restatement approach.[4] Ohio law

---

4. In a related case involving MI&I, this Court cited *McDonald* for the proposition adhered to in this case, and approved the District Court's conclusion that Missouri might apply section 302 when considering corporate rights and liabilities. *Manchester Premium Budget Corp. v. Manchester Insurance & Indemnity Co.*, 612 F.2d 389, 391–92 n.8 (8th Cir. 1980).

The application of Ohio law in the case at bar is not inconsistent with *Jump v. Manchester Life & Casualty Management Corp.*, 579 F.2d

449 (8th Cir. 1978). In that case, Jump sued the parent corporation of MI&I, alleging that the parent corporation converted MI&I's property by failing to return a portion of an I.R.S. tax refund. That claim was characterized as sounding in tort for conversion, and we found that the Missouri courts had adopted the most-significant-relationship test of the Restatement (Second) in tort actions, a test which led to the application of Missouri substantive law under the facts of that case. Here, use of Ohio law

would be applied.[5] Even if we were in doubt, the result would be the same, because we customarily defer to the views of the district courts on questions of the law of their forum states.

The appellants next argue that the Ohio preference statute is unconstitutionally vague. The statute upon which suit was brought, Ohio Rev.Code Ann. § 3903.17 (Page), reads in pertinent part:

Any transfer of, or lien upon, any property of any company made or created within four months prior to the filing of a petition for an order to show cause under section 3903.03 of the Revised Code, which enables any creditor, policyholder, or contract holder to obtain a greater percentage of his debt than any other creditor, policyholder, or contract holder in the same class and is accepted by a creditor, policyholder, or contract holder having reasonable cause to believe that such a preference will occur, is voidable.

* * *

The appellants argue that the words "debt," "creditor," and "class" are not defined or explained in this statute or elsewhere in Chapter 3903 of the Ohio Revised Code, and that "men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application * * *." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). We disagree. The vagueness doctrine "does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." *Horn v. Burns and Roe*, 536 F.2d 251, 255 (8th Cir. 1976). This is not a criminal statute. Neither does the statute deal with First Amendment rights, which would require the application of a stricter standard. *Smith v. California*, 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959). The simple question is whether the challenged words "are such that the ordinary person exercising common sense can sufficiently understand and fulfill" the prescriptions of the statute. *Horn, supra*, at 254.

Measured against these standards, the statute withstands constitutional attack. The words "debt" and "creditor' are terms of common usage. Persons of ordinary intelligence have a general understanding of what debts are and who creditors are. These words are not inherently ambiguous and do not require more precise statutory definitions. Although the term "class" is not a word which is so commonly used, it is not unconstitutionally vague and is capable of a common-sense interpretation from the context in which it is used. A lawyer of ordinary intelligence exercising common sense would understand without difficulty that the acceptance of payment in full for legal services on the eve of insolvency of the debtor, with the knowledge that most other lawyers would be paid nothing or less than what they were owed, would create a preferential payment which is voidable under the statute. No construction of the statute under which this payment would *not* be a preference has been suggested, and we can think of none. The vagueness argument requires no further comment.

The District Court found that at the time the payments were accepted by the law firm, Samuel J. Goldenhersh and Leo M. Newman had reason to believe that they were being preferred. The appellants do not challenge this finding. It is clear that the payments were voidable preferences under Ohio Revised Code Ann. § 3903.17 (Page), and the judgment of the District Court is therefore affirmed.

---

gives a uniform rule applicable to all of Jump's efforts to recover preferences. If Missouri substantive law is applied here, other States might apply their own substantive law in other actions against allegedly preferred creditors, creating the very real risk that the assets of the defunct company might be not equitably distributed. That is the very problem the *McDonald* rule is designed to cure.

5. Because we decide this case under Ohio substantive law, we do not consider whether the payments would be voidable even under Missouri law.