**LINDELL TRUST COMPANY,**
Plaintiff-Appellant,

v.

**COMMONWEALTH LAND TITLE
INSURANCE COMPANY et al.,**
Defendants-Respondents.

No. 41285.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 9, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 16, 1981.

Application to Transfer Denied
March 9, 1981.

Robert C. Jones, Clayton, for plaintiff-appellant.

William G. Ohlhausen, St. Louis, for defendants-respondents.

SIMON, Judge.

Plaintiff-appellant Lindell Trust Company (Lindell Trust) appeals from a judgment of the Circuit Court of the City of St. Louis, which held that defendant-respondent Commonwealth Land Title Insurance Company (Commonwealth) was not liable to Lindell Trust on a 1976 default judgment entered against Guaranty Land Title Company (GLTC) in the amount of $190,233.79. The court entered its findings of fact and conclusion of law.

On appeal Lindell Trust alleges that the trial court erred in relieving Commonwealth of liability for the 1976 default judgment in that 1) the conveyance of GLTC's assets and encumbrances by Deeds of Trust on GLTC's real property were made in fraud of GLTC's creditors' rights; 2) that Commonwealth's St. Louis operation was merely a continuation of the business of GLTC; 3) that the conveyance and encumbrances amounted to an absorption and merger of GLTC and placed GLTC's assets beyond the reach of its creditors for no consideration; 4) that Cowealth, Inc./Guaranty Title Company was merely a continuation of GLTC and 5) it was not necessary to have an execution issued and returned nulla bona as a condition precedent to maintaining the present action.

As this case involves a complex web of corporate transactions, it would be beneficial to examine its background in detail.

GLTC had been in the title insurance business for many years and was Commonwealth's agent in the St. Louis area. In addition, GLTC was engaged in the construction disbursement escrow (CDE) business, issuing completion guaranties to lenders thereby assuring them that their construction projects would be completed. The record indicates that the agency relationship between Commonwealth and GLTC extended only to the title insurance component of GLTC's business.

On November 15, 1976 the Circuit Court of St. Louis County entered a default judgment in favor of Lindell Trust against GLTC for the sum of $190,233.79. The dispute had arisen out of a CDE agreement that GLTC had entered into four years earlier. It is this judgment, plus interest, which Lindell Trust seeks to collect from Commonwealth.

Commonwealth's involvement in this matter has its origin in a series of events beginning sometime in the late spring or early summer of 1976. At that time GLTC discovered a shortage of approximately $428,000 in its CDE account. Unable to secure a bank loan, GLTC turned to Commonwealth for help in solving its financial problems. Commonwealth was cautiously receptive to GLTC, and sent a team of auditors to GLTC's office from Commonwealth's Philadelphia headquarters. After several meetings between the officers of each corporation, two agreements were executed on July 28, 1976. Under the first agreement, Cowealth, Inc. (Cowealth), a newly created, wholly owned subsidiary of Commonwealth, agreed to purchase many of GLTC's operating assets and to pay or discharge only certain liabilities and obligations of GLTC as specified in the agreement. The dispute involving Lindell Trust was not specified therein. The purchase price was to be $94,433.19, subject to adjustments. Since there were uncertainties concerning the collectability of GLTC's accounts receivable, it was agreed that the receivables actually collected would be added to the purchase price. Also there was a discrepancy found in the amount of premium due Commonwealth and on the resolution of the discrepancy, the premiums due would be deducted from the purchase price. A final reconciliation would take place five years from the date of the closing.

Under the second agreement Commonwealth agreed to lend GLTC the funds to cover the shortages in its CDE account. Cowealth assumed the burden of disbursing these funds. To secure this loan GLTC executed two deeds of trust in favor of defendant, Joseph H. Weyhrich, as trustee for Commonwealth on GLTC's apartment complex, Chateau Du Mont, and on a downtown office building known as 804 Chestnut Street.

Acting in accordance with the agreements, GLTC ceased doing title insurance and CDE business on August 9, 1976 and the next day changed its name to See D M, Inc. On the same day, Cowealth changed its name to Guaranty Title Company. Letters were sent by Guaranty Title Company to GLTC's former customers announcing the change in ownership of the title insurance business. Guaranty Title Company operated out of the same facilities as GLTC had previously used and changed the name on the exterior of the office. Guaranty Title Company hired a new manager but retained all of GLTC's employees, with the exception of the president, Rodney Champitt, and the secretary-treasurer, Violet Roehrig. These two individuals were retained for a short time as consultants.

Guaranty Title Company did not solicit nor engage in any new CDE business. Pursuant to the agreements, Guaranty Title Company did disburse funds on existing CDE accounts. From August 9, 1976 to October 29, 1977 rent was paid for the office space in the 804 Chestnut Street building to See D M, Inc. On or about March 7, 1977 Guaranty Title Company was dissolved and later liquidated, and its assets were distributed to its sole shareholder, Commonwealth. On October 29, 1977 the 804 Chestnut Street property was conveyed by quit claim deed to Commonwealth.

The standard for review of court tried cases is well established. The judgment of the trial court shall be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

Initially, Lindell Trust alleges that, "The Court erred in failing to set aside the conveyance by Guaranty Land Title Company to Cowealth, Inc., a wholly owned subsidiary of Commonwealth Land Title Insurance Company, of substantially all of its assets and the encumbrance by Commonwealth Land Title Company of the remaining assets of Guaranty Land Title Company for the reason that there was inadequate consideration for the conveyance and for the encumbrance, the conveyance and/or encumbrance was made in anticipation of Lindell Trust Company's recovery of judgment against Guaranty Land Title Company, the conveyance and/or encumbrance constituted a transfer of nearly all of Guaranty Land Title Company's assets, Guaranty Land Title Company was insolvent at the time of the conveyance and/or encumbrance, and the overwhelming weight of the evidence demonstrated that the conveyance and/or encumbrance was made in fraud of creditor's rights."

Lindell Trust relies on § 428.020 RSMo 1978, which provides:

"Every conveyance or assignment in writing, or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in action, or of any rents and profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the *intent to hinder, delay or defraud* creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity issuing out of them, shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void." (emphasis added)

Thus, under § 428.020 RSMo 1978, the essential elements of a cause of action for a fraudulent conveyance are: 1) a conveyance; 2) of goods or chattels; 3) with an *intent* to hinder, delay or defraud creditors. The court noted in *Barnard v. Barnard*, 568 S.W.2d 567, 569 (Mo.App.1978):

"To establish a cause of action, [under § 428.020] the creditor must show a conveyance by defendant debtor made for the purpose of putting his assets beyond the reach of the creditor."

The burden of proof falls upon the plaintiff. *Publicity Building Realty Corporation v. Thomann*, 353 Mo. 493, 183 S.W.2d 69, 72 (Mo.1944). Fraud is never to be presumed when the transaction may be fairly reconciled with honesty. *Chesley v. Krotchen*, 437 S.W.2d 680 (Mo.App.1969). The third element, i. e., intent, is difficult to establish by direct proof. To overcome this difficulty, our courts have recognized certain "badges of fraud," the existence of which are used to discern intent to hinder, delay or defraud. Our Supreme Court noted in *Allison v. Mildred*, 307 S.W.2d 447, 453 (Mo. 1957):

"While it is undoubtedly true as a general legal proposition that 'fraud is not to be presumed, but must be proved by the party alleging it,' yet it is especially true, that fraud is seldom capable of direct proof, but for the most part has to be established by a number and variety of circumstances, which, although apparently trivial and unimportant, when considered singly, afford, when combined together, the most irrefragable and convincing proof of fraudulent design." (citations omitted)

Among the several "indicia or badges of fraud" expressly recognized by our courts are: 1) Inadequate consideration for the conveyance; 2) A conveyance in anticipation of a law suit; 3) Transfer of all or nearly all of the debtor's property; and 4) A debtor's insolvency subsequent to the conveyance. *Allison, supra; Tockman v.*

*Shower Doors, Inc.*, 568 S.W.2d 74 (Mo.App. 1978); *Morris v. Holland*, 529 S.W.2d 948 (Mo.App.1975). Lindell Trust alleges the existence of each of these "badges of fraud." We shall examine each of these allegations in detail.

## A. INADEQUATE CONSIDERATION FOR THE CONVEYANCE.

Lindell Trust alleges that there was "inadequate consideration for the conveyance and/or encumbrance..."

The trial court found that on July 28, 1976 Cowealth and GLTC entered into an agreement, whereby Cowealth purchased specified assets of GLTC and undertook responsibility for specified obligations and liabilities.

Under the agreement the purchase price for the assets was $94,912.26, plus any accounts receivable actually collected, less accounts payable ($821.00). All of the title insurance premiums found to be owed by GLTC to Commonwealth were to be deducted from the purchase price. At the time of the agreement the amount of premium due was not determined; a final accounting was set for five years from the date of closing.

Lindell Trust claims that in adding up the value of the assets, no price or consideration was assigned to "the company name, its good will, prepaid expenses (other than insurance), office supplies, and Guaranty Land Title Company's substantial stocks and investments ... having a value of $40,-865.25." In addition Lindell Trust claims that no consideration was given for the covenant not to compete.

Moreover, Lindell Trust argues that paragraph 10 of the agreement allows Cowealth to avoid all payment to GLTC. This provision reads as follows:

"Buyer shall withhold payment of the Purchase Price plus any collected accounts receivable for a period of five (5) years from the date of collecting ... [The] Buyer may at his option, deduct and apply all or any portion of the amount so withheld ... toward payment of any indemnity payments that may become due." [1]

Thus, Cowealth would be able to offset the amount it owed to GLTC. Under the terms of the agreement Commonwealth is holding approximately $70,000 belonging to See D M, Inc. (formerly GLTC), but that See D M, Inc. owes Commonwealth much more. Thus, Lindell Trust contends that See D M, Inc. will never receive any money under the agreement.

Lindell Trust also alleges that the five year delay is a delay and hindrance to the creditors, as well as a mechanism to reduce, through inflation, the value of the consideration.

Commonwealth relies on *Russe & Burgess v. Miesner Lumber & Mfg. Co.*, 243 S.W. 353 (Mo.App.1922). In *Burgess*, our court found there to be adequate consideration even though the transferor corporation received little cash in exchange for the corporate assets. The court said:

"Though the company received but little actual cash in the transaction, the undisputed evidence tends to show that thereby debts of the company were paid amounting to much more than the value of the assets received by the new company. *Where a corporation transfers its property, the assumption by the purchaser of liabilities of the selling corporation is a valid consideration and good as against the creditors of such corporation, if the liabilities assumed bear a fair relation in value to the assets so transferred.*" (emphasis added) (citations omitted) 243 S.W. at 356.

See also, *Land Red-E-Mixed Concrete Company v. Cash Whitman, Inc.*, 425 S.W.2d 919, 922–23 (Mo.1968).

1. Under paragraph 9 of the Agreement GLTC agreed to:
"defend, indemnify and hold harmless [Cowealth] against ... any and all costs, damages, liabilities, and deficiencies and expenses ... paid or incurred by [Cowealth] resulting from: (a) Claims made against [Cowealth] with respect to liabilities and obligations of or claims against [GLTC] not expressly assumed by [Cowealth] ... (c) The discharge of [GLTC's] obligations in connection with: (i) the receipt, holding and disbursement of funds under each CDE Agreement."

Commonwealth argues that the agreement for the purchase of GLTC's assets must be viewed as part of an overall agreement which also included lending GLTC $428,000 to fund the shortage in its CDE accounts and the subsequent lending to GLTC of $29,000 which enabled GLTC to pay its taxes. Rather than two separate agreements, Commonwealth argues that there was but one agreement consisting of simultaneous transactions.

Commonwealth views the agreements as follows: Commonwealth advanced GLTC $457,000 (i. e., $428,000 for funding the CDE shortages and $29,000 to pay the taxes), plus agreed to pay an undetermined amount in five years for some of GLTC's operating assets. In return Commonwealth received a title company valued at $300,000 and deeds of trust on Chateau Du Mont and 804 Chestnut Street.

■ Commonwealth's argument is the more persuasive of the two. The circumstances surrounding the execution of the July 28 documents support Commonwealth's contention that they should be viewed as a single agreement. A fair, arms-length agreement was reached: Commonwealth received the title insurance business and GLTC received the necessary funds to clear up the CDE account deficiency, to pay its taxes and also the amount of the purchase price to be finally determined at a later date.

Schedule A to the agreement between Cowealth and GLTC specifically lists all the assets to be sold. This list includes the general item: "Any and all other assets or records of [GLTC] kept or utilized by [GLTC] in the operation of its title insurance business." The amount of $20,000 was listed in the itemized agreement for "Title Records and Facilities" could have been found to include some or all of the items alleged to have been transferred without consideration. Thus, there was substantial evidence from which the fact finder could have found the consideration to be adequate.

### B. CONVEYANCE IN ANTICIPATION OF SUIT.

■ Lindell Trust claims that the conveyance from GLTC to Cowealth and the encumbrance to Commonwealth were made in anticipation of the suit and in anticipation of the rendering of the judgment against GLTC.

Lindell Trust introduced no evidence at the trial to support its claim. Lindell Trust merely points out: "The concomitance of Commonwealth's involvement in Guaranty Land Title Company's financial dilemmas and Lindell Trust Company's institution of suit in the St. Louis County Circuit Court against Guaranty Land Title Company . . . is too impeccable to be a mere coincidence."

All of the testimony at trial indicated that the representatives of Commonwealth attempted, without much success, to understand the extent of GLTC's legal liabilities. Numerous lawsuits were pending and the testimony indicates that the Lindell Trust dispute was discussed but no reserve for it was established. The evidence shows that the single over-riding concern during this time was curing the $428,000 CDE account shortage.

There is substantial evidence to support the trial court's finding.

### C. TRANSFER OF ALL OR NEARLY ALL OF DEBTOR'S PROPERTY.

■ It is well settled that a conveyance by a debtor of all or nearly all of his property gives rise to an inference of fraudulent intent. *Harrison v. Harrison*, 339 S.W.2d 509 (Mo.App.1960).

■ Lindell Trust argues that pursuant to the July 26 agreement, Cowealth obtained all of GLTC's assets, with the exception of GLTC's interests in Chateau Du Mont, 804 Chestnut, and several deeds of trust on scattered residential properties. Chateau Du Mont and 804 Chestnut were encumbered by deeds of trust on the same date pursuant to the loan agreement between Commonwealth and GLTC. On August 9, 1977, 804 Chestnut was conveyed to Commonwealth for no consideration. Thus, argues Lindell Trust, GLTC "was left without sufficient means to pay its debts . . ."

Commonwealth disputes Lindell Trust's interpretation of the facts. After the agreements took effect, GLTC (at that time renamed See D M, Inc.) retained title to its various properties. See D M, Inc. received rent on 804 Chestnut from Commonwealth. Moreover, See D M, Inc. received income from Chateau Du Mont.

Nowhere in the record before us is there any indication of the total value of See D M, Inc.'s remaining assets. We conclude there is substantial evidence to support the trial court's finding.

## D. DEBTOR'S INSOLVENCY SUBSEQUENT TO CONVEYANCE.

Lindell Trust contends that the July agreement rendered GLTC insolvent. Lindell Trust bases its claim on GLTC's June 30, 1976 balance sheet which showed GLTC's liabilities exceeded its assets by approximately $40,000 and a deficit in retained earnings of $77,363.08.

Commonwealth argues that at no time after the July agreement was See D M, Inc. unable to pay its bills. In addition, Commonwealth contends there is no evidence in the record to show that GLTC/See D M, Inc. could not satisfy the judgment.

Central to the resolution of this issue is the definition of the term "insolvent." In *Adams v. Richardson*, 337 S.W.2d 911, 916 (Mo.1960), our Supreme Court noted, "Insolvency . . . means inability to pay debts as they become due in the ordinary course of business."

As already mentioned, Lindell Trust never attempted to execute the judgment against See D M, Inc. Thus, there is no evidence that See D M, Inc. was unable to satisfy the judgment. Commonwealth correctly points out that See D M, Inc.'s balance sheet does not accurately reflect its short-term financial outlook; many of See D M, Inc.'s liabilities are long-term debts, not due for several years. Commonwealth notes the same balance sheet discloses that GLTC (See D M, Inc.) carried as assets four deeds of trust valued at $73,942. These remained in GLTC's (See D M, Inc.) owner-

ship after the transactions with Commonwealth and could have been executed on by Lindell Trust to partially satisfy its judgment.

We conclude that there is substantial evidence to support the trial court's findings of fact regarding the badges of fraud. We rule this point against Lindell Trust.

Lindell Trust next alleges that "[t]he court erred in failing to set aside the conveyance by Guaranty Land Title Company to Cowealth, Inc., a wholly owned subsidiary of Commonwealth Land Title Insurance Company of substantially all of its assets and the encumbrance by Commonwealth Land Title Insurance Company of the remaining assets of Guaranty Land Title Company for the reason that Commonwealth Land Title Insurance Company's St. Louis branch operation was merely a continuation of the business of Guaranty Land Title Company in that Cowealth, Inc. was formed for the purpose of continuing the business of Guaranty Land Title Company and did so, after changing its name to Guaranty Title Company, in the same location, with the same facilities and personnel and with the same assets as had been used in the business by Guaranty Land Title Company, and further, Guaranty Title Company utilized the same customer list as, and completed all work in progress without notifying the creditors of Guaranty Land Title Company."

Lindell Trust relies on *Brockmann v. O'Neill*, 565 S.W.2d 796, 798 (Mo.App.1978). In *Brockmann*, our court noted that "the general rule of law in Missouri is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: 1) where the purchaser expressly or impliedly agrees to assume such debts; 2) where the transaction amounts to a consolidation or merger of the corporation; 3) where the purchasing corporation is merely a continuation of the selling corporation; or 4) where the transaction is entered into fraudulently in order to escape liability for such debts." (citations omitted) In applying the general

rule to the factual situation of *Brockmann*, our court held that there was a continuation of the selling corporation. The *Brockmann* facts were as follows: Royal and Consolidated were two separate corporations both engaged in general electrical contracting. The major stockholders, primary officers and two directors of Royal, were major stockholders, primary officers and directors, as well as two of the incorporators, of Consolidated at the time of its incorporation. Royal ceased doing business; Consolidated took over all of Royal's projects. Consolidated used the same workers, supervisors, trucks and equipment as Royal. Consolidated failed to notify the contractors of the changeover. Moreover, Consolidated did not notify its employees of the change.

Relying on these facts, our court concluded, "there was no significant difference between Royal's operation and that of Consolidated and that a 'continuation' is presented", and held that recovery could be had from Consolidated on a promissory note executed by Royal.

Lindell Trust sees the case at bar as an analogous fact situation. Commonwealth formed Cowealth for the purpose of acquiring assets and continuing the business operation of GLTC. See D M, Inc. is no longer actively engaged in any business. After Cowealth took over GLTC, Cowealth retained GLTC's office, furnishings, etc. All of GLTC's employees were retained for at least a short period of time, all but the primary officers of GLTC stayed with Cowealth permanently. Cowealth took over the performance of GLTC's contracts. Lindell Trust argues that the only change that occurred was a change of the names on the doors and the hiring of a new manager.[2]

The record does not support Lindell Trust's allegations. Although Cowealth's stated corporate purpose was very broad, the record clearly shows that GLTC and Cowealth were not engaged in the same business. Cowealth did not undertake all of the selling corporation's business, it only took over the title business operations.

Cowealth merely settled the outstanding CDE accounts. There is no evidence of common stockholders, directors or officers. Cowealth notified the employees and customers of the change in ownership. In notifying the employees, Cowealth expressly stated that no new CDE business was to be undertaken. The factual situation in the instant case is markedly different from that in *Brockmann*.

The evidence does not support Lindell Trust's position. Lindell Trust's second point is without merit.

Lindell Trust, in its next point, argues: "The court erred in failing to set aside the conveyance by Guaranty Land Title Company to Cowealth, Inc., a wholly owned subsidiary of Commonwealth Land Title Insurance Company, of substantially all of its assets and the encumbrance by Commonwealth Land Title Insurance Company of the remaining assets of Guaranty Land Title Company for the reason that Commonwealth Land Title Insurance Company's St. Louis branch operation amounted to a merger and absorption of Guaranty Land Title Company in that the entire operation of Guaranty Land Title Company and everything which had made it a going concern were acquired by Cowealth, which, on behalf of Commonwealth, conducted and operated a title insurance business in St. Louis, using the offices, employees, name, good will, and title plant interests of Guaranty Land Title Company, Guaranty Land Title Company ceased doing business and the conveyance and/or encumbrance of all of Guaranty Land Title Company's assets placed them beyond the reach of its creditors for no consideration."

Lindell Trust uses basically the same argument as in the issue of continuation. For the reasons already noted, we find this argument unconvincing. Accordingly, we rule this point against Lindell Trust.

Lindell Trust's fourth point is that the court erred in failing to find Commonwealth liable to Lindell Trust in that Cow-

**2.** See *Zachra v. American Mfg. Co.*, 179 Mo. App. 683, 162 S.W. 1077 (Mo.App.1913) and *Berthold v. Holladay-Klotz Land and Lumber Co.*, 91 Mo.App. 233 (1901).

ealth/Guaranty Title Company was liable to Lindell Trust in that it acquired substantially all of GLTC's assets in fraud of creditors' rights, it was merely a continuation of GLTC and was a continuation of GLTC and it amounted to a merger and absorption of GLTC and upon dissolution and liquidation, Commonwealth as Cowealth/Guaranty Title Company's sole shareholder and distributee of all of GLTC's assets, acceded to all of GLTC's liabilities. Our rulings on Lindell Trust's preceding allegations are dispositive of this point also. Accordingly, we find this point to be without merit.

■ Lindell Trust under its fifth point argues that the court erred in finding it necessary for Lindell Trust to issue an execution on the property of GLTC and have the same returned nulla bona as a condition precedent to maintain the present action to set aside a conveyance as being in fraud of GLTC's creditors' rights.

Lindell Trust misreads the trial court's findings of fact and conclusions of law. Our review indicates that the court found:

"There was no evidence adduced at the instant trial which indicated that Lindell Trust ever attempted to execute on its default judgment against GLTC in Cause No. 378864 prior to May, 1978. On that date Lindell Trust filed a garnishment against Commonwealth for the funds it allegedly holds for See D M pursuant to the July 28, 1976 agreement."

This finding is consistent with the trial court's conclusion of law, wherein it held that "from the entire record herein that none of the foregoing badges of fraud were present regarding the transfers and conveyances about which Lindell Trust complains. Those transfers and conveyances are valid and therefore will not be set aside."

As noted earlier, one of the badges of fraud is the debtor's insolvency subsequent to the conveyance. Pursuant to our earlier holding that insolvency means the inability to pay debts as they become due in the ordinary course of business, the record indicated no inability on the part of GLTC to pay its debts following the conveyance, and the trial court merely found that there was insufficient evidence of GLTC's insolvency. An execution returned nulla bona would have been prima facie evidence of GLTC's insolvency, i.e., its inability to pay its debts as they become due. See *Tockman, supra,* at 77.

We rule this point against Lindell Trust. Judgment affirmed.

STEWART, P. J., and SNYDER, J., concur.