**Robert L. RATCHFORD, Jr., Superintendent of Insurance, State of Ohio, Liquidator of Manchester Insurance and Indemnity Company, Appellant,**

v.

**MANCHESTER LIFE & CASUALTY MANAGEMENT CORP., James B. Hutchings, Ralph B. Hutchings, Robert R. Hutchings, and Samuel J. Goldenhersh, Appellees.**

Nos. 81–1971, 81–2012.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 8, 1982.

Decided June 3, 1982.

Thompson & Mitchell, Thomas R. Jayne, St. Louis, Mo., for Ralph B. Hutchings and Robert R. Hutchings.

John J. Horgan, D. Raymond Raney, II, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, Mo., for appellee Goldenhersh.

Gerald A. Rimmel, David T. Weir, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for appellees Manchester Life & Cas. Management Corp. and James B. Hutchings.

Denis J. Murphy, Alan F. Berliner, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, William G. Ohlhausen, Richard A. Ahrens, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant.

Before LAY, Chief Judge, STEPHENSON, Circuit Judge and OVERTON,* District Judge.

---

* The Honorable William R. Overton, District Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

OVERTON, District Judge.

This is an appeal from the district court's[1] judgment on jury verdicts for the defendants in an action to recover certain payments which were alleged to be both fraudulent conveyances and illegal dividends under Missouri law. The plaintiff-appellant Ratchford, who is Superintendent of Insurance for the State of Ohio, is the appointed liquidator of the Manchester Insurance and Indemnity Company by order of the Court of Common Pleas of Franklin County, Ohio.[2] Named as defendants were Manchester Life and Casualty Management Corporation, corporate parent of the company under liquidation, and the Management Company's directors.[3] We affirm the district court's judgment.

## I.

The Management Company is a publicly held Missouri corporation which owns the Manchester Insurance and Indemnity Company (MI&I) and a number of closely related subsidiaries. MI&I was in the business of writing automobile liability policies for high risk insureds, and has been for some time undergoing liquidation in the Ohio state courts.

The Management Company conducts business through a group of wholly-owned subsidiaries which includes MI&I. Among other subsidiaries is Manchester Premium Budget Company which finances premiums for MI&I's insureds. Premium Budget frequently borrowed capital from a St. Louis area bank with the Management Company guaranteeing Premium Budget's indebtedness. Premium Budget did business with no one but MI&I. Also related to these companies was Manchester Data Science Corporation, which furnished data processing services for the other Manchester corporations. To say the least, the Manchester Companies enjoy a symbiotic and mutually dependent relationship. The Management Company performed all management services for its subsidiaries. Moreover, all these corporations had the same directors and in-house counsel. The boards of all corporations met jointly.

In prior litigation, the liquidator obtained a judgment on behalf of the MI&I for $889,000 against Premium Budget. The judgment was based on a promissory note given by Premium Budget to MI&I. *Manchester Ins. & Indemnity Co. v. Manchester Premium Budget Corp.*, 469 F.Supp. 126 (E.D.Mo.1979). With the exception of $369.22 garnished from Premium Budget's bank account, the judgment remains unpaid. The liquidator instituted this action to recover certain payments, allegedly in excess of $500,000, made by Premium Budget to the Management Company. Plaintiff alleged the transactions were a fraud on Premium Budget's creditors and, simultaneously, illegal dividends in that Premium Budget was insolvent at the time the payments were made. In a four count complaint, recovery was sought against both the Management Company and the directors of Premium Budget.

After a six day trial, the jury returned verdicts for the defendants on all counts. Mr. Ratchford appeals, arguing a number of errors in the jury instructions and that the verdicts were against the weight of the evidence.

The Court would note at the outset that the case is presented in something of an awkward posture. Repeatedly throughout the briefs, counsel for both sides have argued as to the rightness or wrongness of

1. The Honorable James H. Meredith, Senior Judge for the Eastern District of Missouri, presiding.

2. Ratchford succeeded Harry V. Jump, the previous Superintendent, in the position as liquidator.

3. These corporations and individuals have been at the bar of this court on a number of occasions. *See, e.g., Jump v. Goldenhersh*, 619 F.2d 11 (8th Cir.1980); *Manchester Premium Budget v. Manchester Ins. & Indemnity Co.*, 612 F.2d 389 (8th Cir. 1980); *Jump v. Manchester Life & Casualty Management Corp.*, 579 F.2d 449 (8th Cir. 1978). Different aspects of the factual background of this litigation are emphasized in each of this Court's previous opinions involving these parties. They will be only briefly summarized here.

certain instructions, referring to the instruction simply by number. Surprisingly, the instructions are not reproduced or quoted in the briefs. Some are not part of the designated record, and, in some instances, see, e.g., brief of Ralph B. Hutchings and Robert R. Hutchings at 26–29, no clue is given as to what the instruction was about. Counsel have apparently proceeded on the assumption that this Court was as familiar with the instructions as they undoubtedly are. We would simply point out that the state of the record has placed us at something of a disadvantage.[4]

## II.

The plaintiff's complaint consisted of four counts presenting distinct causes of action against the various defendants. Count I, styled "Common Law Fraudulent Transfer,"[5] alleged that certain funds were transferred from Premium Budget to the Management Company without consideration and with the intent to "hinder, delay and defraud" the plaintiff as a judgment creditor of Premium Budget. This count sought to have the payments "set aside and annulled," but sought a money judgment only from the defendant Management Company. Count II averred that the same payments were illegal dividends under Mo.Rev. Stat. § 351.220(1) in that, at relevant times, Premium Budget's net assets were less than its stated capital. In other words, Premium

Budget should not have been paying any dividends because it was insolvent. Judgment was sought against the Management Company for its knowing acceptance of illegal dividends. Count III sought judgment against James B. Hutchings and Samuel J. Goldenhersh, both directors of Premium Budget, for having authorized the allegedly illegal dividends. Count IV alleged that because of the supposed insolvency of Premium Budget the defendants Samuel Goldenhersh, Ralph, James and Robert Hutchings, Jack Cordes and Jack Copilevitz,[6] as directors of the corporation, owed a fiduciary duty to the corporation's creditors to preserve corporate assets so as to satisfy creditors' claims. Their negligent failure to supervise the business was said to have rendered them liable to the judgment creditor in the amount of the transfers. The jury returned verdicts for the defendants on all counts and for the defendant Samuel Goldenhersh on a cross-claim seeking indemnity based on his alleged legal malpractice.

## II.–A

In the first of five points raised on appeal, the plaintiff contends Judge Meredith erred in his jury instruction on intent to defraud. Some instruction on intent was necessitated by the Missouri definition of the action for fraudulent conveyance: "(1)

> Every conveyance or assignment in writing, or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in action, or of any rents and profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity issuing out of them, shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void.

**4.** In reviewing the instructions we have been forced to rely on the transcript in which, of course, the instructions are not conveniently numbered as they are in the briefs.

**5.** Although the issue is not raised by the parties, we have some doubt whether a cause of action for fraudulent conveyance is properly termed a matter of common law in Missouri. Such an action is, however, clearly created by Mo.Rev.Stat. § 428.020 (1978). All of the cases relied on by the appellant, and all which our research has revealed, in fact have applied § 428.020 or its predecessors. *See, e.g., Lindell Trust Co. v. Commonwealth Land Title Ins. Co.,* 611 S.W.2d 283 (Mo.App.1980). We assume for purposes of this decision that if a common law action for fraudulent conveyance exists in Missouri law, it is coterminous with the rights afforded by this statute and governed by the same legal requirements. The statute provides:

**6.** Cordes and Copilevitz settled with the plaintiff before trial and are not parties to this appeal.

a conveyance; (2) of goods or chattels; (3) with an intent to hinder, delay or defraud creditors." *Lindell Trust Co. v. Commonwealth Land Title Ins. Co.,* 611 S.W.2d 283, 286 (Mo.App.1980); see n.5, *supra.*

The plaintiff contends that the intent instruction, apparently taken from Devitt and Blackmar's *Federal Jury Practice Instructions,* § 16.05, placed too onerous a burden on him in requiring proof of specific intent to deceive or cheat. Fraudulent conveyance cases, it is said, can rarely be proved by direct evidence of intent to cheat. Hence, the Missouri courts have often stated that the requisite fraudulent intent may be inferred from the existence of certain affiliating circumstances known as "badges of fraud." *See, e.g., Lindell Trust Co., supra; Tockman v. Shower Doors, Inc.,* 568 S.W.2d 74 (Mo.App.1978). The plaintiff essentially argues that the trial court should have given his proffered instruction on badges of fraud in lieu of the Devitt and Blackmar instruction on intent to defraud.

While it appears no Missouri cases have specifically approved the instruction given below on intent to defraud, it is even more clear that no Missouri court has ever condoned the giving of a jury instruction incorporating the badges of fraud theory. Rather the badges have been used in testing the sufficiency of evidence to support an equity court's finding for or against the existence of fraudulent intent. The Missouri courts' use of this device is illustrated in *Harrison v. Harrison,* 339 S.W.2d 509, 516 (Mo.App. 1960):

"Certain circumstances so frequently attend conveyances to hinder, delay or defraud creditors that the courts recognize and refer to them as indicia or badges of fraud, among them being: a conveyance to a spouse or near relative; inadequacy of consideration; the transfer of all or nearly all of a debtor's property; insol-

vency; retention of possession by a debtor; and the failure to produce available or rebutting evidence when the circumstances surrounding the transfer are suspicious. [Citations omitted] And while none may by itself establish fraud, a strong inference of fraud arises from the concurrence of several such badges. [Citations omitted]"

The many Missouri cases referring to badges of fraud list varying circumstances which may be considered as badges or indicia. Compare *Brown v. Oehler,* 192 S.W.2d 515, 517 (Mo.App.1946) (seven badges listed), with *Harrison v. Harrison, supra* (six badges), and *Lindell Trust Co. v. Commonwealth Land Title Ins., supra,* (four badges). The cases generally say that the concurrence of "several" or "so many" may give rise to a strong inference of fraudulent intent. Courts of equity handily deal with such reasoning processes. Such is not the material, however, of which jury instructions are made.[7]

In light of the clear requirement of *Lindell Trust* and many other cases that intent to hinder, delay or defraud creditors must be shown, we think some instruction on the meaning of intent to defraud was necessary. The plaintiff's proffered instruction on proof of intent from badges of fraud was properly rejected. Under these circumstances, and particularly when viewed in light of the trial court's other instructions, we cannot say the Devitt and Blackmar instruction was given in error. It should be noted that the trial court gave not only the standard instruction on circumstantial evidence but also Devitt and Blackmar's instruction on proof of a defendant's intent from surrounding circumstances, § 14.13 of *Federal Jury Practice Instructions.* Thus, plaintiff's counsel were free to utilize whatever badges of fraud had been adduced by the proof in attempting to per-

---

7. Although we have found no Missouri cases affirming a refusal to give such an instruction, the equitable nature of the theory has been implicit in many discussions. *See, e.g., Brown v. Oehler,* 192 S.W.2d at 517, "None of these things, above, establish fraud, but where there is a concurrence of so many badges, a strong

inference of fraud is raised, and a *court of equity* will be justified in finding its existence, in the absence of some explanation on the part of the defendant," quoting *Toomay v. Graham,* 151 S.W.2d 119, 125 (Mo.App.), (emphasis ours).

suade the jury as to the defendants' fraudulent intent.[8]

## II.–B

The plaintiff's second contention on appeal is that the trial court erred in not requiring the defendants to prove their good faith once a *prima facie* case had been made out. This is essentially an argument that the court should have given the proffered instruction on badges of fraud, together with an attack on the following instruction:

> "Fraud is never presumed but must be proved by a preponderance of the evidence.
>
> "You should assume that men are fair and honest in their dealings until the contrary appears from the evidence.
>
> "If a transaction is equally capable of two interpretations, one honest and the other fraudulent, it should be found honest."

We would note at the outset that this instruction hardly does more than restate the burden of proof in a civil case. Additionally, however, the instruction seems amply supported by the Missouri Court of Appeals statement in *Lindell Trust Co.*, 611 S.W.2d at 286, that "[f]raud is never presumed when the transaction may be fairly reconciled with honesty." The instruction is, moreover, adapted from Devitt and Blackmar, § 83.03.

■ The plaintiff further contends in this connection that proof of several of the supposed badges of fraud constituted a *prima facie* case which shifted the burden of proof to the defendants to show their good faith. Although the theory is an interesting one, the cases cited by the plaintiff which discuss the badges theory simply do not place this burden on defendants. In the *Lindell Trust* case, after noting that "the creditor must show a conveyance by defendant debtor made for the purpose of putting his assets beyond the reach of the creditor," [citation omitted], the court stated simply, "The burden of proof falls upon the plaintiff." While the badges of fraud theory has been used by equity courts to support an inference of fraudulent intent, an inference which is especially strong in the absence of a satisfactory explanation from the defendant, it has not been said to shift the burden of proof.

■ Also, in connection with his contention as to the shifting burden of proof, the plaintiff alleges the trial court's error in giving Instruction No. 22 relating to the business judgment rule. He failed, however, to make an objection on the record to the giving of this instruction, and the defendant correctly points out that Rule 51, *F.R.Civ.P.*, precludes raising the issue on appeal.[9]

## II.–C

■ Plaintiff's third point on appeal is that the so-called "corporate whole" theory, which was argued to the jury to substantiate the defendants' good faith, is, as a matter of law, an insufficient defense to plaintiff's claims. The defendants consistently argued that the mutually interdependent nature of the Management Company's subsidiaries meant that the several companies could freely transfer assets among each other whenever necessary to preserve financial health of the total corporate family. While the plaintiff is correct that separate corporations cannot freely commingle their assets as a matter of corporation law, we think that in a fraudulent conveyance suit, where the intent of the defendants was a

---

**8.** We were advised at oral argument that the badges theory was, in fact, argued to the jury in closing argument.

**9.** A motion was filed in this court requesting modification of the record to show that an objection to this instruction was, in fact, made to the trial court during an instruction conference. This conference, we are told, lasted the better part of a day and was off the record.

The appellees correctly point out that the motion actually seeks a modification or change in content of the record to disclose what actually took place in the district court. As such, the motion should have been filed in that court under Rule 10(e), *F.R.A.P.* We have no idea what took place at this off-the-record conference, and would note that such a practice obviously handicaps our review of the instructions.

crucial element, the argument was not altogether an improper one. Certainly, counsel are generally afforded fairly wide latitude in closing arguments. And the supposed theory had some relevance to the defendants' claim that the transfers were in good faith and necessary to allow the Management Company to defend and monitor the liquidation proceedings against MI&I. It also has some bearing on whether the transfers were supported by consideration, which is one of the badges of fraud about which so much has been said.[10]

Finally, no objection was made at trial to this line of argument.

### II.–D

For his last two points on appeal, plaintiff argues that the jury's verdicts on the unlawful dividend count and the fraudulent conveyance count were against the weight of the evidence. The plaintiff, however, failed to move for a directed verdict at any point in the trial. This precludes any challenge to the sufficiency of the evidence on appeal. *Superturf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1279 (8th Cir. 1981).

The judgment in No. 81–1971 is affirmed.

This disposition of the appeal in No. 81–1971 makes unnecessary any consideration of the related appeal in No. 81–2012, which sought a new trial on the defendants' cross-claim against Samuel Goldenhersh for legal malpractice in the event that a new trial had been awarded on Count IV of the amended complaint in No. 81–1971. The appeal in No. 81–2012 is, therefore, dismissed as moot.

It is so ordered.

---

**10.** There is the suggestion in the briefs that the trial court erred in failing to give plaintiff's proposed Instruction No. 2. This instruction is not in the briefs or the designated record and, therefore, cannot be reviewed.