Rodney DARR and Terry Hepler, Plaintiffs-Respondents,

v.

BRENNAN CATTLE COMPANY, Defendant,

and

Kirkland Enterprises, Inc., Intervenor,

and

First National Bank of Freeport, Illinois, Intervenor-Appellant.

No. WD34006.

Missouri Court of Appeals, Western District.

Sept. 20, 1983.

Philip Dale Barrett, Kirksville, for intervenor-appellant.

Edward L. Campbell, Kirksville, for plaintiffs-respondents.

Before WASSERSTROM, P.J., and KENNEDY and NUGENT, JJ.

WASSERSTROM, Presiding Judge.

The issue in this case is whether the security interest of First National Bank of Freeport, Illinois ("the Bank") has priority over plaintiffs' judgment lien. The trial court accorded priority to plaintiffs. We reverse.

On June 2, 1981, plaintiffs obtained judgment against Brennan Cattle Company ("Brennan") for $65,000. Brennan appealed from that judgment without supersedeas bond, but subsequently voluntarily dismissed the appeal.

On June 4, 1981, two days after the judgment in favor of plaintiffs, Brennan transferred 2,169 head of cattle to Kirkland Enterprises, Inc. ("Kirkland") at a sale price of $824,476.56. Brennan and Kirkland are corporations both of which are controlled by the Brennan family. These corporations followed a general practice by which Brennan sold cattle to Kirkland at the beginning of the grazing season and Kirkland resold the cattle to Brennan at the end of the grazing season.

These two corporations have had a joint line of credit with the Bank since 1976. Since that time there has been a series of loans and a series of security interests on cattle given by each of the corporations to the Bank. Of special importance for purpose of this case is a security interest given by Brennan to the Bank on May 27, 1979,

and filed by the Bank with the recorder's office of Sullivan County, Missouri, on June 1, 1979. That security interest covered a number of different items including livestock and the proceeds thereof "together with all property of a similar nature or kind to that therein described wich [sic] may be hereafter acquired by the Debtor."

Concurrently with the sale of the cattle by Brennan to Kirkland on June 4, 1981, Kirkland executed a note to the Bank for $900,000 and also executed a security agreement and financing statement as collateral. The $900,000 note bears the following two notations: "This note also secured by a mortgage for 200,000 dated April 13, 1977" and "This note also secured by a note and mortgage dated May 25, 1979 in the amount of $500,000 to Kirkland Enterprises Inc."

The June 4, 1981 sale was reflected on the daily sales record of the Brennan books. The results of the loan transaction of that date were reflected on the Bank's records by a credit to Brennan of $824,476.56 and a debit to Kirkland in the same amount. Prior to the June 4, 1981 transaction the Bank's records showed a balance due by Brennan of $1,228,224.28; after the transaction, that balance was reduced to $403,-747.72.

In November 1981, 276 steers were shipped to M.B. & L. Commission Company for sale and were sold on November 12, 1981, for $112,600.89. On that same day plaintiffs ordered execution supported by garnishment against M.B. & L. and served interrogatories. M.B. & L. filed answers to the interrogatories to the effect that it held $112,600.89 for Brennan, and M.B. & L. paid $62,110.02 (covering the judgment, interest and costs) into the registry of the court.[1]

Kirkland and the Bank then each filed a motion to intervene, which were allowed. Both motions challenged the right of Brennan to the proceeds of the sale, and contended that the cattle had been owned by Kirkland and that Kirkland was entitled to the proceeds of sale. The Bank filed a formal denial of the M.B. & L. answer to interrogatories in which the Bank stated that the steers sold by M.B. & L. and the proceeds thereof were the property of Kirkland, not Brennan, and that the Bank held a prior perfected security interest to it from Kirkland covering the cattle and the proceeds. The Bank's denial then went on to allege: "That even if said steers belonged to Brennan Cattle Company, Inc., they are subject to a security agreement, perfected by a UCC filing in Sullivan County, Missouri, a copy of each being attached hereto and made a part hereof."

The trial court held a hearing at which all parties appeared and offered evidence. The court later made an order ruling in pertinent part as follows: "That neither intervenor Kirkland Enterprises, Inc. or the First National Bank of Freeport, Illinois have any right, title or interest in and to the funds resulting from the garnishment that are now in the registry of this court."

On this appeal, the Bank contends that the trial court erred in finding that it had no right, title or interest in the proceeds of the cattle sale, because regardless of the validity of the security interest which it received from Kirkland, it in any event had a good security interest from Brennan. The Bank points out that under Sec. 400.9–301(3)[2] the plaintiffs' lien took effect on November 12, 1981, the date of the garnishment. On the other hand the Bank lien was perfected on June 1, 1979, and therefore is prior in time and right. The Bank also points out that its 1979 security interest covered not only property owned by Brennan at that time, but also after-acquired cattle. Also to be noted is that the security agreement dated May 25, 1979, covers future advances as permitted by Sec. 400.9–204(5).

---

1. The record yields no explanation for the difference between the amount of the judgment entered for plaintiffs on June 2, 1981, and the $60,520 shown in the General Execution as the amount of the judgment. Perhaps the original amount had been reduced by some prior execution or other partial payment.

2. All sectional references in this opinion are to RSMo 1978.

■ The only reasonable attack which could be made on the technical sufficiency of the Bank's security interest would be that the financing statement dated May 27, 1979, and filed June 1, 1979, Exhibit I–FNB–Ex. 18, was not manually signed by the Bank as secured party. Although plaintiffs do not attack the security interest in its argument on that ground, Sec. 400.9–402 does require that the secured party sign the financing statement. However the deficiency of the financing statement in this regard has been cured by the typewritten designation of the Bank as the secured party and the Bank's authentication of that designation by filing the financing statement. *Benedict v. Lebowitz,* 346 F.2d 120 (2d Cir.1965); *Matter of Save-On-Carpets of Arizona, Inc.,* 545 F.2d 1239 (9th Cir. 1976); *Peoples Bank of Bartow County v. Northwest Ga. Bank,* 139 Ga.App. 264, 228 S.E.2d 181 (1976); *In re Horvath* (D.C.Conn. 1963), 1 UCC Reporting Service 624.

■ The trial court did not indicate the reason for its conclusion against the Bank, but plaintiffs by their argument suggest various grounds for affirmance. They argue in the first place that the Bank is estopped to assert any rights under the security interest given to it by Brennan or to rely on ownership of the collateral by Brennan, because of the Bank's position at trial that Kirkland owned the cattle. Plaintiffs argue that by the allegations of the Bank's motion to intervene and its testimony, it made judicial admissions that Brennan did not own the cattle after the sale of June 4, 1981, to Kirkland.

There was no such judicial admission. Plaintiffs' claim was based on their proposition that Brennan owned the cattle before June 4, 1981, and continued to be the true owner of the cattle thereafter. Rather than "admitting" that proposition, the Bank denied it and for the first branch of its argument claimed that Kirkland became the owner on June 4, 1981.

Moreover, the Bank's position was alternative: it claimed that Kirkland owned the cattle after June 4, 1981, and that the Bank could rely on its security from Kirkland; but if that were not true, then in any event the Bank also had security interest given by Brennan, and if Brennan continued to be the owner then the Bank had a right to rely on its security given by Brennan. This alternative position was made perfectly clear in the Bank's denial of the answers by the garnishee. The alternative nature of the Bank's claim was recognized at all times during the trial of this matter, as evidenced by the summary at the outset by the trial judge of the issues to be tried: "And the Freeport Bank says, 'We have a security interest either way you go. Either—we're going to win either way the coin comes down. Even if it stands on edge, we'd still like to have the money.' In other words, you're saying that you have a security interest in the cattle whether they're Brennan Cattle Company or whether it's Kirkland Enterprises."

Plaintiffs make a further argument, which overlaps the first, to the effect that the Bank cannot rely upon its security from Brennan, because on the Bank's theory Brennan ceased to own the cattle on June 4, 1981, and the Bank gave no value until June 4, 1981. The basic answer to this contention has already been given above. The trial court ruled that Brennan did continue to be the owner of the cattle despite the June 4, 1981 transfer, and that ruling is no longer in controversy. The Bank's position has always been an alternative one, the second branch of which has been that if Brennan remained the owner then the Bank has a right to rely upon the security interest which it received from Brennan. As to the matter of consideration, it is immaterial whether the Bank gave new consideration on June 4, 1981, or not. It now relies upon the security interest received by it on May 27, 1979, and there is no challenge to the adequacy of consideration given by the Bank at that time.

■ Finally, plaintiffs argue that the transactions of June 4, 1981, were in fraud of creditors. There is substantial evidence that the purported sale on June 4, 1981, from Brennan to Kirkland was a transfer to hinder, delay and defraud the creditors of

Brennan and was therefore void under Sec. 428.020. That would necessarily render the security interest of January 4, 1981 ineffective, because under the court's ruling Kirkland had no title to support the giving of a security interest to the Bank. Nevertheless, that should have no effect on the security interest of the Bank acquired from Brennan long prior to June 1981.

The two corporations, Brennan and Kirkland, had business relationships with the Bank over a period of many years. The Bank had extended credit for large sums of money for which it had received a series of security interests, none of which had been terminated up to the time of trial. By June 1981 that indebtedness well exceeded $1,000,000. There is no question raised about the bona fide nature of those Bank loans nor that those loan transactions prior to June 4, 1981, were based upon actual full considerations.

One of the old loans made by the Bank to Brennan was represented by a note dated January 30, 1980, for $800,000 original amount and which became due May 29, 1981. The Bank had a valid business reason to seek payment of that note, some reduction thereof, or at the very least a new note and new security interest. The latter is the course which it actually took.

Although the Bank knew of plaintiffs' judgment, there is no evidence that the Bank suggested or encouraged the transactions of June 4, 1981, in order to defeat plaintiffs' rights of collection. It is perfectly consistent with the evidence to conclude that the Brennans advised the Bank that they intended to make the transfer of the cattle in question, and the Bank then simply took action appropriate to protect its own million dollar indebtedness by obtaining a new note and a new security interest from the transferee Kirkland. A fraudulent purpose or intention on the part of the Bank cannot be shown by mere inference, but must be proved, and if the facts shown are equally consistent with an honest purpose, fraud will not be inferred. *Ulrich v. Pierce,* 233 S.W. 401 (Mo.1921); *Chesley v. Krotchen,* 437 S.W.2d 680 (Mo.App.1969);

*Lindell Trust Co. v. Commonwealth Land Title Ins. Co.,* 611 S.W.2d 283 (Mo.App. 1981).

This record provides no basis upon which to penalize the Bank by wiping out or subordinating the secured position which it had enjoyed since 1979. It gained nothing by virtue of the June 4, 1981 transaction, and its taking of the June 4, 1981 security interest from Kirkland put plaintiffs in no worse position than they were before.

Applying the standard of review prescribed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), we conclude that the trial court erroneously applied the law and we therefore reverse the judgment.

All concur.