**CITIZENS NATIONAL BANK OF MARYVILLE, Respondent,**

v.

**Jerry D. COOK, et al., Appellant.**

**No. WD 46734.**

Missouri Court of Appeals, Western District.

July 6, 1993.

Jerold L. Drake, Stephens, Drake & Larison, Grant City, for appellant.

William Y. Frick, Kirksville, for respondent.

Before LOWENSTEIN, P.J., and SPINDEN and SMART, JJ.

SMART, Judge.

This case presents the issue of whether a conveyance of substantially all of one's property to a revocable inter vivos trust for estate planning purposes, and without a conscious intent to defraud creditors, may be set aside as constituting a fraud against one's creditors. Jerry D. Cook, Geraldine M. Cook and Michael Dean Cook appeal from the trial court's judgment setting aside transfers of assets to revocable inter vivos trusts.

Judgment is affirmed.

In 1985, Jerry Cook acquired a line of credit with Gentry County Bank in the amount of $125,000.00. Jerry Cook, Geraldine Cook and Mike Cook executed a guaranty for the line of credit. On September 21, 1988, the line of credit was converted to a promissory note in the amount of $87,175.75, payable to Gentry County Bank, representing money drawn from the credit line. Jerry Cook was the only person to sign the promissory note.

On March 20, 1989, the note matured, but the balance of the note was not paid. Although Mr. Cook thereafter attempted to negotiate a note extension or renewal, no agreement was reached.

On October 13, 1989, a bank officer sent demand letters to each defendant demanding payment in full of the note, including interest. Jerry Cook responded, on October 23, 1989, with an offer to settle his indebtedness with the bank in two installments, proposing to pay no interest. Gentry County Bank made a counter-offer proposing payment in full but extending the due date. Jerry Cook never responded to the bank's counter-proposal and on December 20, 1989, the bank filed suit against Jerry Cook on the note and against Geraldine Cook and Mike Cook on the guaranty. Citizens National Bank of Maryville, which became a party to that suit by substitution after it acquired Gentry County Bank from the FDIC, subsequently obtained a judg-

ment against the three defendants in the amount of $125,000.00.

After some attempts to execute on the judgment, the Bank brought an action against the Cooks to set aside certain transfers into trust as being transfers in fraud of the rights of creditors. At trial, the Cooks testified that in late 1988 they started discussing the idea of executing living trusts for the purpose of estate planning. They eventually consulted with an attorney, Larry Parman, for this purpose. Mr. Parman testified that he did not recall meeting with the Cooks before August 1989, at which time the Cooks had already defaulted on the promissory note. The Cooks set up two revocable inter vivos trusts, one in Jerry's name and one in Geraldine's name. They named themselves as beneficiaries of the trusts and their children as residuary beneficiaries. After the trusts were created, they transferred the majority of their assets equally into the trusts. The assets transferred included five tracts of real property. The transfers to the trusts essentially stripped the couple of any assets in their own names. The trusts included "spendthrift" provisions which purported to keep the assets from the reach of creditors. The minimal assets which remained were seized under execution, but attempts to execute on the trusts were unsuccessful.

■ Mr. Parman testified that he had no recollection of the Cooks ever telling him that they were in default on the note or that they had been sued on the note. He further testified that his work for the Cooks was done by him as an estate plan-

ning strategy, not as a debt avoidance tactic. The trust documents were signed by the Cooks on February 27, 1990. On November 1, 1991, the Bank brought the action against defendants to set aside the conveyances for fraud. The trial court entered judgment for the Bank.[1] The Cooks appeal from this judgment.

■ The Cooks' sole contention on appeal is that the trial court erred in setting aside transfers by Defendants Jerry and Geraldine Cook to their respective trusts as being void against plaintiff because the transfers were not made with the intent to hinder, delay or defraud creditors. The judgment rendered in this court-tried case will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Missouri law makes voidable certain conveyances which are made with the intent to defraud creditors or that have the effect of defrauding creditors. Section 428.020, RSMo.1986; *Bostian v. Bono*, 322 S.W.2d 813 (Mo.1959). Section 428.020, the provisions of which originally adopted in Missouri as a territorial law in 1816, prior to statehood, represented a codification of the common law. 1 Mo.Terr.Laws 15 & 439 (1816); *see also* Comment, *Rights of Creditor Against a Revocable Trust in Missouri*, 11 St.L.U.L.J. 629 (1967). That enactment has remained virtually unchanged to this date.[2] The essential elements to be proven in a suit to set aside a conveyance as fraudulent include: (1) a conveyance; (2) of goods or chattels; (3)

---

1. After the judgment setting aside the fraudulent conveyances became final, the bank executed and levied on the Cooks' real property. To avoid losing their property, defendants paid the judgment in full. Although these facts would appear to raise a question of mootness, when a judgment is paid in full after execution by the judgment creditor, the payment is considered involuntary, and thus, the appeal is not moot. *Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. banc 1983).

2. Section 428.020 provides:
   Every conveyance or assignment in writing, or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in

action, or of any rents and profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity issuing out of them, shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void.

with the intent to hinder, delay or defraud creditors. The burden of proving the elements of fraud falls on the party asserting it. *Lindell Trust Co. v. Commonwealth Land Title Ins. Co.*, 611 S.W.2d 283, 286 (Mo.App.1980). Intent to defraud is rarely proven by direct evidence. *Id.* Thus, Missouri courts are willing to look to "badges of fraud," which may be considered to determine the presence of fraud, since they are items which so frequently attend conveyances to hinder, delay or defraud creditors. *Cohoon v. Cohoon*, 627 S.W.2d 304, 307 (Mo.App.1981). One badge of fraud, standing in isolation, does not support an inference of fraud. *Lindell Trust Co.*, 611 S.W.2d at 286. However, several indicia of fraud, considered together, give rise to a strong inference of fraud. *Id.* The intent to defraud must be shown by clear and convincing evidence. *South Side Nat'l Bank v. Winfield Fin. Serv. Corp.*, 783 S.W.2d 140, 143 (Mo.App.1989).

The trial court specifically found that the transfers by Jerry and Geraldine Cook to their respective trusts were not made with the subjective intention to avoid creditors, but were made for the purpose of estate planning. The trial court, however, found the following badges of fraud present in this case: insolvency of the transferors immediately after the transfer in question, absence of consideration for the transfer, delinquency in repayment of a debt at the time of the conveyance, retention of control of assets by transferors, transfer to close relatives of transferors, and retention of power to revoke the transfer. These are among the common badges of fraud recognized by Missouri courts. *See Bostian v. Bono*, 322 S.W.2d 813, 815 (Mo.1959); *Cohoon*, 627 S.W.2d at 307; *Lindell Trust Co.*, 611 S.W.2d at 286.

After considering the badges of fraud present in this case, the court found that a strong inference of fraud had been created. The court further found that the inference of fraud was not sufficiently rebutted and the transfers of property could not stand. Defendants argue that the trial court's finding of no subjective intent to defraud creditors precluded the court's action of setting aside the transfers as fraudulent. This appeal, therefore, presents the question of whether one may have an objective "intent" to defraud even though one has no conscious, subjective intent to defeat the claims of one's creditors.[3]

It is well established in Missouri that a voluntary conveyance, which includes so much of the debtor's property that it leaves him without a means to pay his debts to creditors, is fraudulent and void against existing creditors, regardless of actual intent. *Bostian*, 322 S.W.2d at 815. The facts in the present case reveal that Mr. and Mrs. Cook transferred the majority of their property into revocable inter vivos trusts after they had defaulted on the promissory note. The record showed no consideration was given for the transfers. The Cooks listed themselves as the beneficiaries of the trust and their children as the residuary beneficiaries. They maintained the benefit of owning the property and had the power to withdraw funds and terminate the trusts. As a general rule,

> [A] person cannot settle his estate in trust for his own benefit, so as to be free from liability for his debts. *The intention of parties to such transfer, whether honest or fraudulent, is wholly immaterial.* The rule is founded on the self-evident proposition that a man's property should be subject to the payment of his debts, although he has vested a nominal title thereto in some other person.

37 C.J.S. *Fraudulent Conveyances* § 218 (1943) (emphasis added).

The transfers left the Cooks insolvent. Mr. Cook testified at trial that after the conveyance of the property, he did not own any real or personal property either in his

---

**3.** The finding of no subjective intent to defraud was wholly gratuitous, and unnecessary to the resolution of any issues in the case. We accept that finding at face value. We find it interesting, however, that the Cooks argue they had no intent to defraud creditors at the time the trusts were established. Their blatant refusal both before and after the establishment of the trusts to voluntarily pay the Bank belies their assertions.

own name or jointly with his wife. Missouri law has long protected the claims of creditors against transfers which render a debtor insolvent. *Blattel v. Stallings*, 346 Mo. 450, 142 S.W.2d 9, 12 (1940). In *Citizens Bank of Hayti v. McElvain*, 280 Mo. 505, 219 S.W. 75, 77 (1920), a husband and wife executed three deeds to real estate two days after being sued. The wife had a large antecedent debt and the conveyance transferred all the property in which she had an interest. The Missouri Supreme Court held that: "[Wife's] deeds stripped her of the last vestige of property. Under such circumstances her intent to hinder, delay, or defraud her existing creditors is shown by the very act. Her words cannot controvert her acts."

The court went on to say:

If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act. .

*Id.* The court concluded that the very act of conveying the property hindered or delayed wife's creditors in collecting their debts.

In *Electrical Workers v. IBEW–NECA Holiday Trust Fund*, 583 S.W.2d 154 (Mo. banc 1979), a credit union brought a garnishment action against a labor union vacation trust fund in an effort to satisfy a judgment obtained against a union member. The court held that the spendthrift provision of the trust agreement was not a bar to recovery of the worker's quarterly benefits by the judgment creditor. The court held that enforcement of the spendthrift provision in such an instance would be contrary to public policy. "[I]t is hornbook law that a person may not create a trust for his own benefit and include a provision restraining the rights of his creditors." *Id.* at 162.

The Cooks construct an argument from the fact that § 428.010, RSMo, was repealed in 1986. That statute provided that every conveyance of goods and chattels *in trust* to the use of the person making the conveyance was void as against creditors. At the same time as § 428.010 was repealed, the legislature amended § 456.080.3, RSMo to make clear that, in spite of the repeal of § 428.010, it was not exempting revocable grantor trusts from the operation of the law of fraudulent conveyances. Section 456.080.3, RSMo Supp. 1990 now provides:

3. A provision restraining the voluntary or involuntary transfer of beneficial interests in a trust will prevent the settlor's creditors from satisfying claims from the trust assets except:

(1) Where the conveyance of assets to the trust was intended to hinder, delay, or defraud creditors or purchasers, pursuant to § 428.020, RSMo; or

(2) To the extent of the settlor's beneficial interest in the trust assets, if at the time the trust was established or amended:

(a) The settlor was the sole beneficiary of either the income or principal of the trust or retained the power to revoke or amend the trust; or

(b) The settlor was one of a class of beneficiaries and retained a right to receive a specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument.

The apparent reason for the repeal of § 428.010 and the amendment of § 456.080 was to allow a spendthrift provision to protect the interest of a vested remainderman, while permitting creditors to reach a grantor's income interest, in cases where the trust was not originally set up to defraud creditors. As for cases where the trust was established to defraud creditors, the provisions of § 428.020 would operate to allow creditors to reach the entire trust property. It is not correct, therefore, as the Cooks argue, that the repeal of § 428.-010 shows a legislative intent to uphold all "spendthrift" provisions of trusts, even those established by a grantor which have the effect of defrauding creditors. Indeed,

the clear language of the amendments to § 456.080 make § 428.020 fully applicable to set aside such conveyances in trust. Therefore, the Bank correctly invoked § 428.020 in attacking the trust in this case.

■  The record is replete with facts supporting the trial court's finding of numerous badges of fraud. The conveyance of the property to the trust effectively hindered and delayed defendants' creditors. The evidence established by clear and convincing evidence a legal intent to defraud creditors, regardless of any evidence of subjective intent. Accordingly, we hold that the ruling was supported by substantial evidence, was not against the weight of the evidence, and correctly applied the law.

Judgment is affirmed.

All concur.